August A. BUSCH, Jr., and Mercantile Trust Company, as Trustees under Indentures of Alice E. Busch, Deceased, dated February 14, 1939 and December 11, 1939, Plaintiffs,

v.

John Overton DOZIER and Daniel Bartlett, Sr., as Trustees under the Will of Elizabeth Overton Busch, Deceased, Lilly Marie Christy Busch Hermann, et al., by Gertrude Buholzer Busch, their guardian ad litem, in their own right and as representatives of the class of persons who may constitute the "next of kin" of the descendants of Lilly Marie Christy Busch Hermann, Carlota Clark Chouteau Flanigan, Elizabeth Overton Busch, Jr. (Burke), August A. Busch III and August A. Busch, Jr., Defendants.

No. 49854.

Supreme Court of Missouri,

Division No. 1.

Jan. 13, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied Feb. 10, 1964.

William Stix, Daniel Bartlett, Jr., St. Louis, for appellants.

Lewis, Rice, Tucker, Allen & Chubb, Joseph W. Lewis, Charles L. Edson, Daniel E. Singer, St. Louis, for respondents Hermann and others.

HYDE, Judge.

Action for declaratory judgment to determine rights of the parties and instruct trustees. The principal issue is whether there was a valid exercise of powers of appointment given Elizabeth Overton Busch, now deceased, by Trust Indentures of Alice E. Busch, now deceased. The court found that Elizabeth did not validly exercise the powers and the trustees named in her will,

John Overton Dozier and Daniel Bartlett, Sr., and her children by her first marriage. John Overton Dozier, Lewis David Dozier III and Marya O'Fallon Dozier, have appealed. We have jurisdiction because of the amount involved, more than $50,000.00 in accumulated income being in dispute when the decree was entered as well as the ownership of the appointive assets.

In 1939, Alice E. Busch (Mrs. August A. Busch, Sr.) executed two Trust Indentures establishing five separate trusts, her son August A. Busch, Jr., being one of the two trustees. Elizabeth Overton Busch (hereinafter called Elizabeth), then the wife of August, Jr., was the beneficiary of one trust, her two children by August, Jr., (Elizabeth Jr. and August III) were beneficiaries of two of these trusts and two children of August A. Busch, Jr., by his first marriage (Lilly Marie Christy Busch Hermann and Carlota Clark Chouteau Busch Flanigan) were beneficiaries of the other two trusts. The five children of August A. Busch, Jr., by his third marriage, are the other defendants herein. The assets of these trusts were mainly trust certificates for Anheuser-Busch stocks. Elizabeth was divorced from August A. Busch, Jr., at the time she made her will herein involved.

The trust created by Mrs. Busch, Sr., in each indenture for Elizabeth contained the following provisions (Sec. 7, Article Second) concerning succession:

"Upon and after the death of Elizabeth Overton Busch, wife of August A. Busch, Jr., the Trustees shall hold or dispose of the entire principal and undistributed net income, if any, of said separate trust estate hereby created for her, in such manner, to or for the benefit of such persons, in such amounts or proportions, and subject to such further trusts if any, and in every event subject to such terms, conditions and limitations as said Elizabeth Overton Busch shall have appointed by her last will; provided, however, that such appointees are either descendants of August A. Busch, Jr., or descendants of said Elizabeth Overton

Busch by her first marriage; and *provided further that each such appointment and all successors in title in default thereof, shall keep all the shares of stock in Anheuser-Busch, Incorporated, and in related companies, in trust hereunder and subject to the voting powers in trust that are described in Article Fourth of this indenture during the life of said voting powers as provided in said Article Fourth;* in the event that no such testamentary appointment shall have been made, or if made, shall not have appointed all of her said trust estate or interest therein, then the trustees shall distribute her said unappointed trust estate or interest therein, and the undistributed income thereof, in equal shares, per stirpes, among the other separate trust estates then held in trust hereunder, namely: (a) the separate trust estate existing under this indenture for the benefit primarily of each of the above named children of August A. Busch, Jr.; (b) each of the other trust estates, if any, existing hereunder for the respective descendants of any deceased children of August A. Busch, Jr.

"If any of said separate trust estates or interest therein shall prior to the death of Elizabeth Overton Busch, have been distributed to the beneficiary or beneficiaries thereof, then the said share that would pursuant to the foregoing provision have been added to said distributed trust estate or interest therein had the same not theretofore been distributed, shall be distributed by the trustees to the same persons or to their executors, administrators or assigns or next of kin, and in the same proportions in which, said earlier distribution was made.

"All the above and the later provisions herein, for the distribution of the principal, shall, unless otherwise expressly provided in the particular instance be given effect subject to the requirement that all shares of stock in Anheuser-Busch, Incorporated, and in related companies, shall remain in trust *hereunder* to protect the voting powers in trust that are described in Article Fourth in this Indenture during the life of said voting

powers as provided in said Article Fourth." (Emphasis ours.)

Elizabeth's will contained the following reference to power of appointment: "All the rest, residue, and remainder of my estate, of whatever kind, real or personal, and wherever situated, whether in possession, right of possession, or expectancy, including all property and interest in property in respect to which I may have at the time of my death the power from any sources to appoint the disposal of by my will, I hereby give, bequeath, and devise unto my son, John Overton Dozier, and Daniel Bartlett, Sr., a member of the St. Louis Bar, as trustees, to hold the same IN TRUST for the following uses and purposes." (The beneficiaries of this trust were Elizabeth's five children, three by her first marriage and two by her marriage to August A. Busch, Jr., all treated equally.)

The contentions of the parties are:

Appellants say: "(1) The evidence of intention to exercise is overwhelming, because Elizabeth's Will says that she is appointing 'all property over which she had the power of disposal from any sources,' she concededly knew that she had the powers in question, and the life estates and preferred remainders are within the limits established by the Indentures.

"(2) Elizabeth did exercise the powers in a manner complying with all requirements of the Indentures, because

"(a) Neither specific reference to the Indentures nor letter-perfect congruence with their scheme is anywhere required by them; and (b) While, and also because, the Indenture Trustees are directed to hold the Anheuser-Busch stock in trust under the Indentures for the duration of the 'voting powers in trust,' the Indentures do not require meaningless repetition of that requirement by Elizabeth's Will, and even if they did, equity would here cure such a minor omission."

Respondents say: "1. Elizabeth did not in her Will validly exercise her power of appointment because she failed to meet the requirement of the Indentures that her appointment keep the Anheuser-Busch stock in trust thereunder and her purported appointment failed to comply with other restrictions therein set forth.

"2. Even assuming that Elizabeth in her Will met all the requirements set forth in the Indentures with respect to the exercise of her power of appointment, nevertheless, the evidence is insufficient to establish that Elizabeth in her Will intended to exercise such power."

The trial court's decree found in accordance with respondents' contentions that Elizabeth "did not, in her Last Will and Testament, validly exercise, in whole or in part, the powers of appointment granted to her under the Indentures" and that appellants "failed to establish by a preponderance of the credible evidence an intention on the part of said Elizabeth Overton Busch, deceased, to exercise, in whole or in part, the powers of appointment conferred upon her under the Indentures."

Respondents point out that the provisions of the trusts for the grandchildren of Mrs. Busch, Sr., (Sec. 8 of Article Second), although granting them powers of appointment, did not contain the provision hereinabove italicized in the provisions of the trust for Elizabeth. However, the interest held in trust for each child was to be "subject to such terms, conditions and limitations, as said child of August A. Busch, Jr., shall have appointed by her or his last will, but subject to the provisions of the last sentence in Section (7) last above; provided, however, that such appointees are 'members of the family' as hereinafter defined, of said deceased child of August A. Busch, Jr." Section 8 stated twice again that all distributions of these grandchildren's shares should be "subject to the provisions of said last sentence in Section (7)." This sentence is the last sentence of the provision for Elizabeth's power of appointment, hereinabove set out.

Article Fourth (referred to by this last sentence) directed the trustees "to vote all such shares of stock if and while held in trust hereunder, for such directors, officers, propositions and measures as said trustees may be directed from time to time by Adolphus Busch III and August A. Busch, Jr., (sons of the settlor) while both are living." It further provided that if one of the sons died (Adolphus died in 1946) the trustees should vote the stock as the surviving son directed but that after the death of both sons the "stock shall become free from the foregoing special provisions relating to voting the same." There were other provisions for termination of the special voting powers, such as the sons being no longer interested in the company, liquidation, merger or exercise of discretionary authority granted to the trustees and the sons or the survivor of them to terminate.

Respondents contend that, to make a valid exercise of the power of appointment, Elizabeth was required to provide in her appointment some provision to keep the Anheuser-Busch stock in trust. They say "this requirement must mean more than that the Anheuser-Busch stock is to remain in trust under the Indentures." They say that was all that was required of the grandchildren but that the provisions for Elizabeth's power of appointment required her to specifically provide for keeping this stock in trust. They further argue that her failure to do so shows she did not intend to exercise the powers of appointment given her by Mrs. Busch, Sr. They also say that her designation of ineligible contingent remaindermen, hereinafter discussed, shows that she did not intend to exercise these powers.

The American Law Institute, Restatement of Property, Sec. 341, states: "When the donee in a deed or will declares in substance that he exercises all powers that he has, this manifests an intent to exercise all such powers, including special powers." See also American Law of Property, Sec. 23.38; 72 C.J.S. Powers § 40, p. 442; 1 Sugden on Powers, 3rd Ed., 416, Sec. 639.

There hardly could be a blanket appointment in broader terms than "all property and interest in property in respect to which I may have at the time of my death the power from any sources to appoint the disposal of by my will." So far as the record shows, Elizabeth had no other power of appointment than the ones given her by Mrs. Busch, Sr., and it is conceded that she knew of these powers.

In Pitman v. Pitman, 314 Mass. 465, 50 N.E.2d 69, 150 A.L.R. 509, the rule of Sec. 341 of the Restatement of Property was cited and followed. The court said: "Pitman made no specific mention in his will of the power created by the twelfth article, but his will contained a residuary clause devising and bequeathing his own property and that over which he had a power of appointment in equal shares to his three children, and if the exercise was valid the minor appointees would be freed from the limitations placed on them in the case of a default of appointment. * * * The only property subject to a power to which the residuary clause could relate was the trust fund created by the twelfth clause of his mother's will. * * * We think that his declaration that he was disposing of property over which he had a power of appointment, when he had no powers other than special or limited powers, manifests an intention to exercise the special power created by the twelfth article of the donor's will and that he has done so."

In the more recent case of Frye v. Loring, 330 Mass. 389, 113 N.E.2d 595, the will involved had a preamble stating "this to be my last will of all property of which I may die seized or possessed, or over which I may have any power of testamentary disposition at the time of my decease." The will appointed to the testator's wife income during her lifetime of the property to which the power of appointment applied but made no other reference to the power. However, the residuary clause gave his wife "all the rest, residue and remainder of my estate, wherever situated, real or personal, in trust or otherwise." The court

citing Sec. 341 of the Restatement of Property said: "Obviously the power was not exhausted by the appointment of a life interest by the third paragraph. Giving his intention expressed in the preamble full effect, as we must, we can only conclude that the unappointed interest subject to the power was disposed of in the residuary clause." See also the following early Missouri cases which are in accord with the principles herein discussed: Bredell v. Collier, 40 Mo. 287, 328; Campbell v. Johnson, 65 Mo. 439; Papin v. Piednoir, 205 Mo. 521, 104 S.W. 63.

■■ Our conclusion is that the rule of Sec. 341 of the Restatement of Property is applicable here and that the intent of Elizabeth to exercise the powers, given her in the Indentures of Mrs. Busch, Sr., is sufficiently manifested. We also conclude Elizabeth was not required in her appointment to provide for an additional voting trust for the Anheuser-Busch stock in order to make a valid exercise of these powers. Instead we consider the provisions of the Indentures for the Anheuser-Busch stock to be held in a voting trust were adequate and self enforcing for the purposes stated and required no consent, reaffirmation or creation of a separate additional voting trust by any of the trust beneficiaries to keep them in effect. These provisions in effect were made part of all authorized appointments, as limitations on the rights of all who could take under them. Elizabeth had no power to change or limit them and nothing she could do in exercising her power of appointment could have any effect to do so. She and anyone claiming under her appointment took an interest in the stock subject to these provisions as to voting rights. Thus our view is that this provision ("shall keep all shares of stock * * * in trust *hereunder* and subject to the voting powers in trust that are described in Article Fourth") means that an appointment left the stock in trust *under* the voting trust established by the Indentures and that is all it means. Therefore, Elizabeth could add nothing to it by mentioning it or take anything away

from it by not mentioning it. This is evident because the provision applied equally to an appointment made by Elizabeth and to "all successors in title in default" of an appointment by her, who were also required to "keep all the shares of stock * * * in trust *hereunder*." Respondents have not claimed that, if she made no appointment, her successors in title would have to set up another voting trust for this stock before they could take the interests given them in default of an appointment by her or explain how they should do so. Thus we construe the provision "keep in trust * * * *hereunder*" to mean that anyone taking Elizabeth's interest, either by her appointment or if no appointment as her successors in title, would hold the stock described *under* the Indentures and "subject to the voting powers that are described in Article Fourth" thereof.

Respondents make the further contention that the residuary section of Elizabeth's will ignored and was in conflict with the requirements of the Indentures for her appointments in the following respects.

■ First: Elizabeth's residuary trustees are given power to vote all stocks. However, Elizabeth had other stock and other property that went to these trustees and, under our construction of the voting trust provisions of the Indentures, these trustees would have no authority to vote any of the stock included in the voting trusts established by the Indentures until after their termination.

■ Second: Elizabeth's residuary trustees were given power to sell her stocks. This power likewise is subject to the provisions of the Indentures for the stock included in these established voting trusts to remain under the voting trust provisions.

■ Third: Elizabeth's will authorized distribution of stocks held in trust for any child of hers on the death of such child. This also would be subject to the provisions of these established voting trusts as to stocks included therein.

Fourth: The Indentures required that Elizabeth's appointees must be either descendants of August, Jr., or descendants of Elizabeth by her first marriage. Respondents say that Elizabeth's will provided for ineligible takers. Her will provided for her residuary trust estate to be divided into five equal shares, one for each child surviving her, with the income to be paid to them during their lives. Her will also provided that at the death of any child his share should go to his children or descendants if any survive him and otherwise to her other children or their descendants surviving.

Her will further provided for retaining in trust the share of any descendant, of a deceased child of Elizabeth, until he was 21 and that if such descendant should die before 21, his share should go "to the persons who may then be his or her heirs at law." Such heirs could be persons who were not descendants of August, Jr., or descendants of Elizabeth by her first marriage. Her will also provided: "If all of my said children should die without leaving lineal descendants to take the trust estate, then upon the death of the last survivor of them, the entire trust estate shall go to those persons who may then be my heirs at law according to the laws of the State of Missouri then in force." Such heirs, of course, would not be descendants of August, Jr., or of Elizabeth by her first marriage.

▮ Although these contingent remainders could result in ineligible takers being the persons designated to take under Elizabeth's will, this does not necessarily make her appointment invalid. These were very remote contingencies and Elizabeth had other property in these trusts which could go under these contingent remainders. "An attempt to exercise a power in excess of its terms is good within the limits of the power, unless the authorized and unauthorized parts are inseparably connected." 72 C.J.S. Powers § 47, p. 459. This same principle was stated in 2 Sugden on Powers, 3rd Ed., 57, Sec. 62, in 1856, as follows: "Where a partial interest is given to an ob-

ject of the power with *remainders* to persons not objects of it, and the doctrine of *cy pres* cannot be applied, yet the whole appointment will not be void, but merely that part which is not authorized by the power. This rule is observed as well at law as in equity." See also Tiffany Real Property, Sec. 702, and cases cited; American Law of Property, Sec. 23.50; 41 Am.Jur. 861, Powers, Sec. 76; annotation 121 A.L.R. 1226.

In re Sessions' Estate, 217 Or. 340, 341 P.2d 512, 529, citing many authorities, states: "The weight of authority is to the effect that a disposition of property under a power of appointment will not be held invalid in toto because a provision thereof is violative of the power, provided the invalid provision is severable from the valid provisions." 41 Am.Jur. 862, Powers, Sec. 79, states: "Almost invariably the appointment of a life interest in itself valid is held good notwithstanding the remainder is ill appointed." Surely this should apply to such contingent remainders as those in this case. For a case holding appointment invalid as to ineligible life tenants but valid as to the remainder, see Central Hanover Bank & Trust Co. v. Hutchinson, 22 N.J.Super. 78, 91 A.2d 654.

Sec. 362, Restatement of Property, states the rule thus:

"Where one part of an appointment is ineffective but another part would, if standing alone, be effective, such other part is given effect unless (a) the two parts are so mingled that it is impossible to fix the line of division between them, or (b) the donee's scheme of disposition is more closely approximated by allowing both parts to pass in default of appointment than by treating as valid the latter part of the appointment and allowing only the property covered by the former part to pass in default." (See Illustrations 1 and 2, IV, as to appointments to ineligible takers.)

▮ Our conclusion is that Elizabeth's appointments in trust for her five children, who were descendants of August, Jr., or of

her by her first marriage, clearly authorized by the Indentures, were entirely severable from any designation of contingent remaindermen who would be ineligible takers and that her scheme of disposition to her own children was her principal purpose in no way dependent upon the provisions for the contingent remainders. We, therefore, hold Elizabeth's exercise of her powers of appointment valid.

The judgment is reversed and the cause remanded with directions to enter a judgment conforming with the views herein expressed.

All concur.