Robert Roy CROSS, Lyman Field and Columbia Union National Bank and Trust Company, Co-Executors of the Will and Estate of Matthew Forbes Cross, Annette Cross Murphy and Columbia Union National Bank and Trust Company, Co-Trustees Under the Will of Mary Forbes Cross, Deceased, Michael Roy Cross, Karen Kathleen Cross, Plaintiffs-Respondents,

v.

Walter M. CROSS III, Kent Forbes Cross Rigsby, Evelynn R. Cross and Cross Foundation, Inc., a Missouri Corporation, Defendants-Appellants.

Nos. KCD 27793 and KCD 27802.

Missouri Court of Appeals, Kansas City District.

Oct. 11, 1977.

Motion for Rehearing and/or Transfer Denied Dec. 5, 1977.

Application to Transfer Denied Jan. 9, 1978.

Gene F. Reardon, Reardon, Reardon & Reardon, Denver, Colo., H. George Lafferty, Jr., Kansas City, for defendant-appellant, Walter M. Cross, III.

Milton S. Bartholomew, Knepper, White, Richards & Miller, Columbus, Ohio, James F. Duncan, Watson, Ess, Marshall & Enggas, Kansas City, for defendant-appellant, Kent Forbes Cross Rigsby.

Lyman Field, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for plaintiffs-respondents.

Before SWOFFORD, C. J., and SHANGLER, DIXON, PRITCHARD, WASSERSTROM, SOMERVILLE, and TURNAGE, JJ.

DIXON, Judge.

The protagonists in this appeal are family members disputing the interpretation to be afforded a will. The action was brought by plaintiffs-trustees for the construction of the will of Matthew Forbes Cross and of the testamentary trust of Mary Forbes Cross. Robert Roy Cross is a son of Matthew. The defendants are Walter M. Cross, III, a son of Matthew, and Kent Forbes Cross Rigsby, a paternal grandson, whose father predeceased Matthew, after which Kent was adopted by his stepfather.

The trial court, upon findings of fact and conclusions of law, entered a judgment in favor of the plaintiffs and the defendants appeal. The basic and dispositive issue to be determined is the effectiveness of a purported exercise of a power of appointment by Matthew Forbes Cross in his Last Will

and Testament creating a trust of which plaintiffs are administrator and trustees.

Mary Forbes Cross was the sister of Ann H. Cross, and the two sisters married two brothers, Roy Cross and Walter M. Cross, respectively. Mary Forbes Cross died childless in 1969, her husband having predeceased her. In her will, Mary established a testamentary trust for the benefit of her nephew, Matthew Forbes Cross, who was the son of her brother-in-law, Walter M. Cross. This trust established by Mary for the benefit of Matthew provided for a life estate of $1,500 per month and gave to Matthew a general testamentary power of appointment over the corpus and accumulated income. The specific language creating the power is as follows:

"Upon the death of Matthew Forbes Cross, or upon my death if he should predecease me, the principal of such residuary trust, if any, and any accumulated income thereon shall be distributed to or for the benefit of such person or persons or corporation or corporations, or estate of my said nephew, in such amounts or proportions, and in such lawful interest or estates, whether absolute or in trust, as my said nephew may appoint by his last will and testament; or if such power of appointment is for any reason not effectively exercised by my said nephew in whole or in part, then such portion or all of the then remaining principal of such residuary trust and any accumulated income thereon as shall not have been effectively appointed by him, shall be paid over and distributed to the person or persons to whom and in the shares and proportions in which his administrator would have been required to pay the same had he died intestate, a resident of the State of Missouri and possessed thereof at such time."

Matthew died in 1970. In his will, primary to the dispute here, is the purported execution of the power given in Mary's will by Article Fourth, the residuary clause, which reads as follows:

"*FOURTH*: All the rest, residue and remainder of my property and estate, whether real, personal or mixed, of whatsoever kind and wheresoever situate, *including all property over which I have power of appointment, which power I hereby exercise* in favor of my residuary estate, I give, devise, bequeath, and appoint to my Trustees hereinafter named, in trust, nevertheless, to be divided by them into two equal and separate trusts (herein called my 'residuary trusts') and to be held, administered and distributed by them as follows:" (emphasis added).

The article continues to establish trusts for the benefit of Walter M. Cross, III, a defendant here, with a life estate to him and a remainder to the children and descendents of Walter, the living children of his first marriage being specifically excluded. There were no living children of Walter M. Cross, III, other than those specifically excluded. A second trust with identical provisions was established for the benefit of Robert Roy Cross, the plaintiff and executor under the will. The living children of Robert Roy Cross have been joined as plaintiffs.

The unborn children of Walter are not referred to in the pleadings in this case except that the potential interest of this class is shown. The interest of these unborn children is, however, the same as the living children of Robert Roy Cross, and under the rule of virtual representation, they will be bound by a decree in this case. *Brown v. Bibb*, 356 Mo. 148, 201 S.W.2d 370, 374 (banc 1947).

The plaintiffs' position is that the will of Matthew effectively exercised the power of appointment given to Matthew in the will of Mary. The defendants, Walter M. Cross, III, and Kent Cross Rigsby, urge that the power was not effectively exercised. This dispute centers upon a provision in the will of Mary as follows:

"C. With respect to the testamentary powers of appointment granted herein the Trustees may rely and act upon any instrument admitted to probate in any jurisdiction as the Last Will and Testament of the person to whom such power is granted; and if the Trustees shall have

no written notice of the existence of any Last Will and Testament of such person within a period of six (6) months after his or her death the Trustees may assume that such person died intestate without exercising such power, and may make distribution of the property subject thereto accordingly without any liability whatsoever. No testamentary power of appointment herein granted shall be deemed to have been exercised effectively unless the Last Will and Testament of the person to whom such power is granted makes specific reference to the power and to this will."

If the power was effectively exercised, Walter M. Cross and Robert Roy Cross will receive life estates with remainders to descendants as noted. Kent Cross Rigsby is not a beneficiary of the trusts. If the power was not effectively exercised, then the takers in default of appointment are the heirs at law of Matthew Forbes Cross.

The trial court, agreeing with the position urged by plaintiffs, entered its judgment and order that the trustees of the Mary Forbes Cross testamentary trust pay over to the executors of the estate of Matthew Forbes Cross any assets remaining in the trust. In its conclusions of law, the trial court found that because the manner of appointment by Matthew Forbes Cross approximated the manner of appointment prescribed by the donor, Mary Forbes Cross, and his appointees were a class favored in equity, the failure to satisfy the formal requirements imposed by the will of Mary Forbes Cross would not render ineffective the exercise by Matthew Forbes Cross. It is from this judgment and order that defendants appeal.

The defendant, Walter M. Cross, III, urges that Matthew Forbes Cross did not effectively exercise the power of appointment because he did not follow the specific method and manner of execution specified by the will of Mary Forbes Cross. The defendant, Kent Cross Rigsby, additionally argues that the evidence offered by the plaintiffs as to the family circumstances and other wills was erroneous because that evidence was irrelevant and immaterial to the intent of Matthew to exercise the power. Therefore, the finding of the circuit court of an intention by Matthew to exercise the power was in error. The plaintiffs, admitting that Matthew did not satisfy the formal requirements imposed by the donor, argue that such failure did not cause the appointment to be ineffective in equity and urge the adoption of the rule of the Restatement of Property in Section 347. They counter the argument of Kent Cross Rigsby by asserting that the intent of Matthew is relevant under Section 341 of the Restatement of Property and *Busch v. Dozier*, 375 S.W.2d 27 (Mo.1964), which adopted that section in the State of Missouri.

Transposing these issues for disposition, the first issue to be decided is the relevancy of the intent of Matthew and of the propriety of the evidence demonstrating that intent and, second, the question of the validity or invalidity of the exercise of the power. Missouri has no statutory authority governing the exercise of powers and the Missouri cases cited do not squarely deal with the issue here presented.[1]

Defendants correctly express the general law in Missouri as it relates to powers of appointment. In *Tayler v. Tayler*, 243 S.W.2d 310 (Mo.1951), the court held that a general power of appointment was not exercised because of a lack of intent on the part of the donee to presently exercise. The court stated the general rule for deciding whether or not a power is exercised:

"It is difficult and, in many instances perhaps impossible, to determine whether a certain action by a donee of a power constitutes an exercise of that power without considering all the terms and provisions of the instrument creating the

1. The dissent reasons from the adoption of statutes in New York and Wisconsin that we should construe these wills in the light of the legislative acts. It would not seem to be sound to follow the legislative intent of sister states in derogation of this court's duty under Section 474.430, RSMo1969. This court should be more concerned with the intent of the testators in this case than the intent of a foreign legislature.

power. The power created by a particular instrument may be a general or a limited power, the manner of its execution may be specified and limited." 243 S.W.2d at 316.

In *Tayler*, the instrument creating the power (a contract) was not before the court, and the decision turned upon the question of *intent to exercise* rather than the effectiveness of the *manner of exercise.* Indeed, the court assumed for the purposes of that opinion that the donee could appoint by any means at any time.

*Tayler* also cites the general rule, as set out in *Citizens' Bank of Lancaster v. Foglesong*, 326 Mo. 581, 31 S.W.2d 778, 781 (1930), that there can be no valid exercise of a power except for the purposes intended by the donor as shown by the instrument creating the power. In *Foglesong,* the court held that the widow, who was the donee of a power to sell for the support of herself and her children, did not exercise the power when she co-signed some notes and a deed of trust on some of the property subject to the power with her son and his wife. There was no valid exercise because there was no showing of a need to dispose of the property for support, which was a condition precedent to the use of the power.

In *Busch v. Dozier, supra,* the issue was whether a *special* testamentary power of appointment had been effectively exercised. Elizabeth Busch was the beneficiary of an inter vivos trust created by her mother-in-law. The trust indenture provided that Elizabeth could appoint the corpus by her will to the descendants of her husband or herself by her first marriage, provided that all shares of stock in Anheuser-Busch be kept in a voting trust as set out in Article 4 of the indenture. In the residuary clause of her will, Elizabeth exercised the power in favor of a testamentary trust for the benefit of her children in the following language:

"[A]ll property and interest in property in respect to which I may have at the time of my death the power from any sources to appoint the disposal of by my will, I hereby give, bequeath, and devise unto my son, John Overton Dozier, and Daniel Bartlett, Sr., a member of the St. Louis Bar, as trustees, to hold the same IN TRUST for the following uses and purposes." 375 S.W.2d at 30.

The opponents of the exercise of the power argued that the donor specifically provided that the Anheuser-Busch stock was to remain in trust and a failure to do so defeated the validity of the exercise and also showed a lack of intent. Initially, the court adopted Restatement of Property § 341 (1940) and held that a blanket appointment declaring that the donee exercises all powers that he has manifests an intent to exercise all powers, including special powers. The court also held that the exercise *without a voting trust in the instrument exercising the power did not invalidate the exercise.* The provisions of the trust indenture creating the power were held to govern so that they became, in effect, provisions of all authorized appointments, and Elizabeth could not change them by mentioning or failing to mention them in her exercise.

In *Seltzer v. Schroeder,* 409 S.W.2d 777, 781–82 (Mo.App.1966), testatrix exercised a general power of appointment by the residuary clause of her will as follows:

"Such residue and remainder of my estate shall include, . . . any property that may be coming to me or my heirs, or such persons as may be named in my will, from Anna K. Craig, of Chicago, Illinois, or her estate, or under the terms of her will, and which may not have been paid to or received by me at the time of my death. It is my desire that whatever real or personal property would go to me or my estate or my legatees through or under the will of Anna K. Craig, go to Frederick Schroeder and Cecile Schroeder as aforesaid."

The court found that the language of the residuary clause created a latent ambiguity because the testatrix technically had nothing coming to her from Anna K. Craig, her estate, or by her will. Testatrix was an heir at law of Anna K. Craig, and she and other heirs brought suit to set aside the will. In a settlement agreement, property

of Anna K. Craig was placed in trust for the benefit of certain persons, including the testatrix. By amendment, the trust was extended and the beneficiaries were given a general testamentary power of appointment over their shares. The court held that the power was validly exercised by testatrix. The court reasoned that while the instrument creating the power was clear and unambiguous, the will exercising the power was not. Section 474.430, RSMo 1969, was held to govern the question of the validity of the testamentary exercise. The court held that the exercise was effective because the provision "any property that may be coming to me" from Anna K. Craig, when elucidated by extrinsic evidence, sufficiently referred to the subject of the power. In reaching this conclusion, the court also gave some weight to the rebuttable presumption against a testator intending partial intestacy.

■ In *Seltzer,* as in *Tayler, supra,* the primary concern was with the intent of the donee to exercise the power. Citing 62 Am.Jur.2d *Powers* §§ 11, 24 (1972), the defendant, Kent Cross Rigsby, urges that the intent of the donor is controlling. However, this text statement does not mean that the intent of the donee is *irrelevant.* Indeed, the intent of the donee to exercise is equally important as the intent of the donor. "Whether an instrument executed by a donee of a power operates as an exercise of that power depends upon the intention of the donee." *Tayler v. Tayler,* 243 S.W.2d at 317; 5 American Law of Property §§ 23.37–23.41 (A. J. Casner ed. 1952); 62 Am.Jur.2d *Powers* § 48 (1972).

■ A distinction must here be made between the intent of the donor in placing limitations on the power as to its scope and extent and the intent of the donor in setting forth a specific manner of exercise. In the case of the limitations on scope of the power, no intent of the donee, however manifest, can broaden the power beyond the intent of the donor. Thus, if the donor has limited the class to whom the donee can appoint, then the donee may not by the most rigid adherence to the manner of execution of the power change the scope of the power. When, however, the issue is the limitation as to the manner of the execution of the power, the intent of both the donor and the donee become relevant. Thus, in the instance where the donor has specified that a power may be exercised inter vivos, it has been held that a testamentary exercise is valid. 2 J. Pomeroy, Equity Jurisprudence § 590, at 597 (5th ed. 1941); 3 Walsh, Law of Real Property § 333 (1947); Restatement of Property § 347, Comment b (1940). The courts have assumed that the intent of the donor to permit appointment at any time is satisfied by the donee's intent to defer the exercise to the moment of death. On the other hand, if the donor specifies that the exercise must be testamentary, an inter vivos execution of the power is denied effect because of the presumption that the donor's intent is to postpone the donee's decision as to the appointment to the last possible moment. 5 American Law of Property § 23.44 (A. J. Casner ed. 1952); Restatement of Property § 347, Comment b (1940).

Upon the basis of the foregoing analysis, it must be concluded that the defendant's assertion that the intent of the donor controls and that the intent of the donee is irrelevant is much too broad. It likewise is clear that the first inquiry must be as to the intent of the donor as to the scope and manner of exercise of the power. No question is in this case as to the *scope* of the power. The power granted is a *general* power. In the manner of its exercise, it is a testamentary power and that limitation on the manner of its exercise is not disputed.

So far as the intent of Mary, the donor, is concerned, the basic inquiry must center upon the language of her will directing her executors in establishing the existence or non-existence of a will and what shall be deemed to be an exercise of the power granted.

The intent of the donor, Mary, is a subtle and complex question. The defendants have argued and premised their right to a reversal upon the ground that the language referred to, "No testamentary power of ap-

pointment herein granted shall be deemed to have been exercised effectively unless the last will and testament of the person to whom such power is granted makes specific reference to the power and to this will," constitutes a clear, unambiguous and certain declaration of the intent of the donor, Mary, that any power not exercised in accordance with that direction shall be ineffective. The plaintiffs, on the other hand, argue that the provision constitutes but a formality which under the rule of Section 347 of the Restatement is substantially complied with and need not defeat the exercise of the power by the residuary clause of Matthew's will.

■ It must be conceded that before any construction of the will of Mary may be undertaken, an ambiguity, latent or patent, must be present requiring the construction of that instrument. *Walters v. Sisler,* 371 S.W.2d 187, 190 (Mo.1963); *Magruder v. Magruder,* 525 S.W.2d 400, 405 (Mo.App. 1975).[2]

■ To determine the question of whether an ambiguity, latent or patent, exists, the courts first look to the language contained in the will and construe it within the four corners of the will. *Smoot v. McCandless,* 461 S.W.2d 776, 781 (Mo.1970); *Prior v. Prior,* 395 S.W.2d 438, 442 (Mo.1965). If upon that analysis, ambiguity appears, resort may be had to the extrinsic circumstances and the rules of construction concerning the interpretation of wills.

■ Adverting now to the specific language utilized by the donor, Mary, and considering that language within the four corners of the instrument creating the power, it cannot be said that it is free from uncertainty and ambiguity as to its meaning. Initially, it should be noted that the quoted language appears in an article of the will

relating to the powers of the trustees. The language follows a paragraph defining for the trustees the basis upon which they might accept a will or conclude that the donee of the power had died intestate. Then, couched in the negative, the language asserts that no power "shall be deemed" to have been exercised effectively unless specific reference to the will and the power is made. The language relied upon by the defendants in the attempt to defeat the power occurs in a paragraph relating entirely to the procedural powers of the trustees in the administration of the residuary trusts created by the donor of the power. These directions contain general directions concerning the sale and conveyance of property, investment powers, and a spendthrift provision. Following that, the language appears as follows:

"C. With respect to the testamentary powers of appointment granted herein the Trustees *may rely and act upon any instrument admitted to probate* in any jurisdiction as the Last Will and Testament of the person to whom such power is granted; and if the Trustees shall have no written notice of the existence of any Last Will and Testament of such person within a period of six (6) months after his or her death the Trustees may assume that such person died intestate without exercising such power, and may make distribution of the property subject thereto accordingly without any liability whatsoever." (Emphasis added).

That language is then followed in the next sentence with:

"No testamentary power of appointment herein granted shall be deemed to have been exercised effectively unless the Last Will and Testament of the person to whom such power is granted makes specific reference to the power and to this will."

---

2. The dissent is critical of the reasoning of this opinion in finding an "ambiguity" in the donor's will. Asserting no one has contended or thought it was ambiguous, the dissent flatly declares it is not. The whole issue between the parties was the meaning and purpose of the language in the donor's will. The discussion of ambiguity and the obvious intent of the testa-

tor to avoid hasty or inadvertent exercise is but a predicate to the real dispute. What the dissent finds is a literal and rigid requirement contrary to what appears to be the overriding testamentary intent. On well recognized common law principle, this court has a duty to construe these wills.

Thus, it appears upon the face of the instrument that a conflict between the language or a patent ambiguity appears. In the first sentence of this paragraph set forth above, the trustees are directed to rely and act upon any instrument admitted to probate. The will of Matthew was unquestionably admitted to probate and on its face it purported to exercise the power granted by the donor under the provisions of Section 341 of the Restatement and the specific language of Matthew's will. At the same time, the trustees are directed not to consider that to be an effective exercise without a specific reference to the power in this will. The issue thus comes down to the question of how the trustees could rely and act upon a will admitted to probate which specifically exercised all powers and at the same time follow the direction of the testator not to consider as an effective exercise any attempted exercise of the power which did not make a specific reference to the creation of the power.

The position of the parties in connection with this instant litigation indicates that doubt and uncertainty exists with respect to the intent and meaning of this language based upon a consideration of the literal language of Mary's will. This entire lawsuit was initiated by the trustees for directions in the disposition of the property to which the power relates and demonstrates that doubt and uncertainty. In fact, it is clear that the trustees might have taken either the position they have espoused in this litigation that the intent was not clear and that they desired instructions or they could have taken the position that the language was clear and distributed to the takers in default. This litigation would then have been commenced by the beneficiaries who would take under the exercise of the power. That the trustees chose to ask for instructions rather than acting without instructions is immaterial; the fact remains that they were understandably in doubt. The inquiry must then be what did the donor intend by this language?

Upon the basis of this analysis and the attendant circumstances, the narrow position that this language constitutes an absolute limitation upon the exercise of the power seems untenable.

The donor had by her plan of distribution and the grant of the broad power left the ultimate distribution of her estate in the hands of Matthew. He was a life beneficiary and a trustee in her testamentary trust. The provision for takers in default is nonspecific and general. Mary could not have had a specific intent to benefit anyone other than the general class of the heirs at law of Matthew. They might have been direct descendants or collaterals, subsequent spouses or descendants of subsequent marriages. Such a generalized gift in default does not indicate an intent to circumscribe the broad general power of appointment by a rigid and arbitrary requirement pertaining to its exercise. Rather, it suggests that her intent was either the conventionally accepted intent to prevent an unknowing or inadvertent exercise or perhaps only the possible easing of the uncertainty of the distributor of her estate. Indeed, considering the general and unlimited power and the gift in default to his heirs at law, she made him, in effect, the owner of the property for all practical purposes.

If the intent was the prevention of an inadvertent or unknowing exercise, then clearly the intention of Matthew is highly relevant, and this construction does not require a finding of any ambiguity; it is the only purpose or intent that can be found on the face of the will. So also, if the language was intended to ease the determination by the executors, the ultimate question of whether the power was exercised must still be answered.

There is a paucity of authority on the issue. It is of little comfort that the issue that is here involved, the conflict between a "blind exercise of all powers" and a "specific reference clause" has been forecast by the scholars to be a difficult case. Rabin, *Blind Exercises of Powers of Appointment,* 51 Cornell L.Q. 1, 17 (1965). The author of that article forecasts that most American courts would follow the doctrine of equitable aid for defective execution.

The plaintiffs urge that this court adopt such a view by adopting Section 347 of the Restatement of Property which is as follows:

"Failure of an appointment to satisfy formal requirements imposed by the donor does not cause the appointment to be ineffective in equity if

(a) the appointment approximates the manner of appointment prescribed by the donor; and

(b) the appointee is a wife, child, adopted child or creditor of the donee, or a charity, or a person who has paid value for the appointment."

■ The comment to Section 347 explains that the rule arose in the English Courts of Chancery and is for the benefit only of those classes of persons traditionally favored by courts of equity. The common law rule is more fully explained in 2 J. Pomeroy, Equity Jurisprudence, §§ 589–90 at 593–94 (5th ed. 1941). The rationale for the rule as explained by Pomeroy is as follows:

"Although in the absence of a valuable consideration there is no complete obligation resting upon the promisor, yet from the presence of the meritorious consideration there is, in contemplation of equity, as between the meritorious beneficiary and the remainderman possessing no equally meritorious claim, a *quasi* obligation,—a duty binding between the parties thus situated. An attempt having been made to execute the power, which is only *formally* defective, equity imputes to the donee in making the attempt an intent to fulfill this *quasi* obligation. An intent to perform having been thus shown and partly accomplished, a court of equity carries it into effect by decreeing a complete performance. The case is thus brought, in appearance at least, within the general principle concerning performance, and the equitable maxim which underlies that principle. The *rationale* thus described may be exceedingly artificial; it may be in reality unsound and inconsistent with other established principles; but notwithstanding these objections, the doctrine itself is firmly settled upon the basis of authority."

This rationale is criticized in 5 American Law of Property § 23.44 at 576–80 (A. J. Casner ed. 1952), as not only imputing an assumed intent to exercise, but also failing to consider the intent of the donor. Where an exercise which fails to observe formalities prescribed by the donor is held to be valid, there must be an inference of the donor's intent and purpose in prescribing the formalities with which the exercise of the power substantially complies. The text puts it, "no amount of intent by the donee will exercise a power in the face of a contrary intent by the *donor*." Thus, in order to aid a formally defective exercise, the court must first interpret the donor's intent in setting forth the manner of exercise and then examine the actual exercise in determining whether there has been a substantial compliance.

Defendants, citing general texts on estate planning, urge that a general testamentary power is often given a spouse so that a testamentary trust will qualify for the marital deduction, although the true intent of the donor is that the surviving spouse will not exercise the power and that the assets will pass in default of appointment. Thus, it is argued that specific requirements as to the manner of exercise are intended to be strictly complied with in order to avoid an exercise which would defeat the donor's plans of distribution. This same argument was rejected by the supreme court in *Shine v. Monahan,* 354 Mass. 680, 241 N.E.2d 854 (1968).

In *Shine,* testatrix was the beneficiary of an inter vivos trust created by her husband. The trust gave the testatrix a general testamentary power of appointment over the corpus and accumulated income to be exercised " 'by specific reference in her will to the full power hereby created.' " In her will, testatrix made a bequest of the residue, " '. . . including all property of which I have the power of appointment by virtue [of] any will or testament or inter vivos trust executed by my husband . . . .' " The court held that the do-

nor's intent was to prevent an inadvertent exercise, citing 5 American Law of Property § 23.44 and the Restatement of Property §§ 346–47. Considering the intent of the donor, the court found that the language used by testatrix satisfied the required specific reference. As to the argument that the power was given only to achieve the marital deduction and was not intended to be exercised, the court concluded, "We see no basis for so concluding from the donor's manifest intent to obtain the benefit of the marital deduction." 241 N.E.2d at 856.[3]

In a recent Massachusetts case not cited by the parties, *McKelvy v. Terry,* 346 N.E.2d 912 (Mass.1976), the Massachusetts court referred to and relied upon *Shine* in deciding a similar case. In the *McKelvy* case, the donor of the power provided a limited power of appointment to be exercised only by a will duly proved and allowed whenever executed, " 'by reference to the limited power of appointment herein given to him.' " The donee of the power executed a will which in its residuary clause exercised all powers in the following language: " 'also including any property over which I may have power of appointment under any instrument, it being my intention to exercise all such powers which I may have at my death.' " The *McKelvy* court first determined that the power had been exercised, saying:

"It seems to us that—confining our attention for the moment to the texts of the donor's instrument and the donee's will and ignoring the attendant circumstances—the power has been exercised effectively; that is, the meaning or design of the relevant clause of the will sufficiently matches any requirement of the trust instrument. That instrument calls for a 'reference' to the power, not a

specific reference, and we think, agreeing with the judge below, that the residuary clause of the will is an adequate reference although it is inclusive of any power created by any instrument in the donee's favor." 346 N.E.2d at 915.

In support of that conclusion, it referred to *Shine* and interpreted *Shine,* using the following language:

"We thought that there need not be exact compliance with the formality indicated by the donor where the approximation would satisfy his basic purpose." 346 N.E.2d at 915.

Thereafter, the court considered the extrinsic circumstances of the donee and indicated that these circumstances removed any question of doubt with respect to the validity of the exercise relying primarily upon proof that the donee was aware of his power of appointment and knowingly exercised it.[4]

A North Carolina case, *First Union National Bank v. Moss,* 32 N.C.App. 499, 233 S.E.2d 88 (1977), has, on even broader language, found a specific reference clause not to require descriptive language in the exercise of the power. There, in a marital trust, the husband-donor provided that the wife should have a power of appointment which contained the language "specifically referring to this power of appointment." The wife executed a will in which she used the language, "including any property or estate over which I have or may have any power of appointment." The court held that in considering the wills together, the words "specifically" and "any" were sufficiently ambiguous to permit an examination of the underlying intent of the parties. The court determined that the intent of the donor was to prevent an inadvertent exercise of the power of appointment and found that the donee intended to execute the power upon

---

3. The dissent relies on estate planning texts and schemes as to marital deduction trusts to imply a certainty of intent to the donor of this power. Since the donor was a childless widow, that seems a little far afield. The difficulties which the dissent imagines occurring in estate planning are based on ignoring the limited holding of this opinion which is construing these wills in this factual context.

4. The dissent distinguishes these cases. The "nice" distinction is without a difference as any careful reading of the Massachusetts cases will disclose. In both *Shine* and *McKelvy,* the court, as has been done here, determined the purpose and intent of the restrictive clause in the donor's will and then found that the donee's exercise did not frustrate that intent or purpose.

the basis of the extrinsic circumstances. The language in the North Carolina case is much less persuasive on the issue of the intent of the donor than the more specific language of Matthew, "including all property over which I have power of appointment which power I hereby exercise," which indicates an awareness of the existence of the power.

In different factual and legal settings, other jurisdictions have found no effective exercise although none of these cases consider the application of § 347 of the Restatement, and some of them are distinguishable because they turn on the interpretation of statutes which relate to the exercise of powers.

In *In re Estate of Schede,* 426 Pa. 93, 231 A.2d 135 (1967), the testatrix attempted to exercise a special power. The will creating this power required that the donor's wife " '. . . *appoint by specifically referring to this Will . . .* '" The testatrix exercised by a blanket appointment in the residuary clause of her will. The court held that the special power was not effectively exercised because under Pennsylvania law, a special power can be exercised only by strict compliance with the limitations prescribed by the donor. However, the holding appears to be limited only to the defective exercise of *special* powers, the court having stated that Section 14(14) of the Wills Act of April 24, 1947, P.L. 89, 20 P.S. § 180.14 applies only to general powers and so was inapplicable. That statute provides:

> " '. . . a bequest of the personal estate of the testator, or any bequest of personal property described in a general manner, shall be construed to include any personal estate, or any personal estate to which such description shall extend, as the case may be, *which he shall have power to appoint in any manner he shall think proper, and shall operate as an execution of such power.*' " Cited in *In re Jeffers' Estate,* 394 Pa. 393, 147 A.2d 402, 405 (1959).

In *Holzbach v. United Virginia Bank,* 216 Va. 482, 219 S.E.2d 868 (1975), the donor established a testamentary marital deduction trust in which he gave to his wife a general testamentary power of appointment in the following language:

> " 'My wife, Julia H. Hall, is hereby given as to the corpus of the marital trust existing at her death, a general power of appointment, by specific reference to the powers granted herein, in her will, in favor of her estate, or, at her election, in favor of any other party. Should she fail to so appoint as to all or any portion of such corpus, then, upon her death such unappointed corpus, shall become a part of the Residual Trust to be administered as herein after provided.' " 219 S.E.2d at 870.

The will of the donee provided:

> " 'I give and bequeath unto my beloved sister, HAZEL H. HOLZBACH, provided she survives me, all of my estate, be it real, personal or mixed, or in which I may have a power of appointment of whatsoever nature, kind or description, and wheresoever the same may be located, in fee simple and absolutely.' " 219 S.E.2d at 870.

The beneficiary of the wife's will argued that the attempted exercise was effective under a Virginia statute [5] which provided that appointments by will must be made with the usual formalities necessary to pass property belonging to the testator, but that a power executed in a valid will is a valid execution even if the instrument creating the power requires " 'some additional or other form of execution of solemnity.' " 219 S.E.2d at 871 n. 3. The court held that the statute was inapposite because the requirement that the donee make "specific reference" to the power is not merely an "additional or other form of execution or solemnity." The court went on to hold that the power was not effectively exercised. "The test is not whether the donee intended to appoint but rather whether the donee *manifested* her intent in the manner prescribed by donor, . . . " 219 S.E.2d at 871.

5. Virginia Code § 64.1–50 (1950).

Two dissenting justices would have given effect to the exercise, adopting a rule that "where a donee undertakes to exercise a testamentary power of appointment by a validly executed will substantial compliance with the donor's requirements should suffice." 219 S.E.2d at 873. This they reasoned was because the purpose of such "specific reference" provisions is to avoid an inadvertent exercise by the donee and where the language exercising the power indicates a knowing and deliberate exercise, that purpose is achieved.

Finally, in *Liedy Chemicals Foundation, Inc. v. First National Bank of Maryland*, 276 Md. 689, 351 A.2d 129 (1976), an exercise was held ineffective. The trust instrument creating the power provided for distribution " ' . . . *to those persons and corporations which John Jacob Leidy, by his Last Will and Testament, may expressly appoint . . . .*' " 351 A.2d at 130. In his will, the testator devised the residue of his estate, " ' . . . which I may own or have the right to dispose of at the time of my death . . . .' " 351 A.2d at 130. The court's decision was based upon the Maryland Code, Art. 93, § 4–407 (1957, 1969 Repl.Vol.), providing:

" '*Subject to the terms of the instrument creating the power*, a residuary clause in a will exercises a power of appointment held by the testator if, and only if;
(i) an intent to exercise the power is expressly indicated in the will or
(ii) the instrument creating such power of appointment fails to provide for disposition of the subject matter of the power upon its nonexercise.' (emphasis supplied)." 351 A.2d at 131–32.

The court noted that the purpose of the statute was to prevent an inadvertent exercise but held that the statute did not aid the exercise because of the requirement of an express exercise, "*i. e.*, either by a reference to the instrument creating the power or by a reference to the estate which was subject to the power. Our cases have long held that when the method of execution of the power is set out in the instrument creating

it, that method of execution must be used, and another will not suffice." 351 A.2d at 132.

Section 474.430, RSMo 1969, although not directly referable to powers is relevant. It reads:

"All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them."

As noted at 5 American Law of Property, *supra*, the equitable rule requires a construction of the intent of the donor as well as the donee of a power. There can be no question in this case that the intent of both testators is basic to the issue to be decided.

There is Missouri authority indicating that Section 474.430 is relevant in determining the validity of the exercise of powers granted by will.

In *Holland v. Bogardus-Hill Drug Co.*, 314 Mo. 214, 284 S.W. 121 (banc 1926), the issue was whether a life tenant with a power to "dispose of" granted in her husband's will was empowered to execute a lease for a term extending beyond her life. The intent of the donor as to the scope of the power was found to be determinative and the validity of execution was to be decided as follows:

"In considering this subject, it would serve no useful purpose to call into requisition the numerous decisions of our various courts in dealing with *common-law principles* relating to powers and the *execution* of same, for the obvious reason that the lawmaking power of our state has marked out a line of construction which should be followed in passing upon the issue which now confronts us [citing predecessor to Section 474.430]." 284 S.W. at 122.

The court held that the lease was valid against the contention that it was an improper exercise of the power to dispose.

 Upon the basis of the foregoing authority and considering the specific language of the donor's will in this case, this court holds that the intent of the donor in this will was to prevent an inadvertent

exercise of the power of appointment and that she did not intend to create a rigid and unyielding limitation upon the exercise of the power. Further, that Missouri should adopt Section 347 of the Restatement of Property (1940) which enunciates the common law principle of aiding the defective execution of a power in equity which is consistent with the Missouri authority set forth herein and Section 474.430, RSMo 1969. So holding, this court emphasizes that persuasive in this case is the fact that the donor's language as to the manner of execution of the power does not appear conjunctively with the grant of the power as it did in the *Holzbach* case. Instead, the restricted language is appended to a paragraph involving the directions to the trustees. Also, a contrary position would require a literal interpretation of the will which thwarts the intention of the testator viewing the will as a whole. *Housman v. Lewellen,* 362 Mo. 759, 244 S.W.2d 21 (banc 1952); *Lehmann v. Janes,* 409 S.W.2d 647 (Mo.1966). Likewise of importance are the dispositive scheme of the donor's will to make the property to all intents and purposes the property of Matthew, the broadness of the power created, and the fact that the gift in default is a generalized gift with no specific gift to identified persons. Other factual situations and other language might compel a contrary result, but on all the facts and circumstances of this case, it seems clear that this court should hold that this language presents only a manifest intention to prevent an inadvertent exercise or to ease the burden of the executors in the distribution of her will if appropriate language had been used.

That still leaves for disposition the question of whether or not the clause in Matthew's will approximates the manner of appointment prescribed by the donor. It would seem that the Massachusetts cases earlier cited are very close in the language construed to the language here involved, but in any event, the language used by Matthew is latently ambiguous in the use of the "all powers" language when construed against the proof of the existing power in Mary's will. Matthew was a trustee of Mary's trust, as well as a beneficiary and must have been aware of the power. The extrinsic evidence also indicates that no other power of appointment existed. In construing that latent ambiguity as in *Seltzer* and looking to the attendant circumstances, it seems clear beyond doubt that Matthew intended to exercise the power.

There is also strong evidence intrinsic to the will of Matthew that the exercise was deliberate. His will provided for outright gifts of $60,000 to his wife and $40,000 to his grandson, Kent Cross Rigsby. The value of Matthew's estate as of the date of death was $1,109,677.00, including the assets of Mary's testamentary trust valued at $413,121.00. If Matthew did not intend to exercise the power of appointment under Mary's will, he would have been encumbering his residuary estate of approximately $600,000.00 with two $1,500.00 a month life estates. It seems unlikely that he would have made that generous a provision for his sons for life if he were not anticipating that his residuary estate would include the assets of Mary's trust.

Upon these facts and aided by the adoption of Section 341 of the Restatement by *Busch v. Dozier, supra,* the residuary clause in Matthew's will must be held to have intended to exercise the power in Mary's trust.[6] The following excerpt from *Busch v. Dozier,* 375 S.W.2d at 31–32, is apropos:

> "The American Law Institute, Restatement of Property, Sec. 341, states: 'When the donee in a deed or will declares in substance that he exercises all powers that he has, this manifests an intent to exercise all such powers, including special powers.' See also American Law of

6. The dissent ignores this case and its adoption of the Restatement as to the exercise of powers. Clearly, under this case, the donee exercised the power. The dissent's position, that an all powers clause cannot exercise a power with a specific reference clause, flies in the face of this decision. Sections 341 and 347 of the Restatement are correlative. Section 341 cannot be adopted without, by implication, adopting Section 347.

Property, Sec. 23.38; 72 C.J.S. Powers § 40, p. 442; 1 Sugden on Powers, 3rd Ed., 416, Sec. 639. There hardly could be a blanket appointment in broader terms than 'all property and interest in property in respect to which I may have at the time of my death the power from any sources to appoint the disposal of by my will.' So far as the record shows, Elizabeth had no other power of appointment than the ones given her by Mrs. Busch, Sr., and it is conceded that she knew of these powers.

· · · · ·

"Our conclusion is that the rule of Sec. 341 of the Restatement of Property is applicable here and that the intent of Elizabeth to exercise the powers, given her in the Indentures of Mrs. Busch, Sr., is sufficiently manifested."

Also appropriate is the language from *McKelvy,* 346 N.E.2d at 916:

"And if the donor of the power of appointment was seeking to ensure that the donee would advert to the power when the time came and make a choice, not by chance but after some thought (see the *Shine* case, *supra,* 354 Mass. at 682, 241 N.E.2d 854; cf. 5 American Law of Property § 23.44 [1952]), we think his purpose was measurably achieved."

The other requirement of the common law equitable rule which requires that the beneficiaries of the power be meritorious beneficiaries is clearly apparent upon the face of the exercise of this power. The specific beneficiaries are within the meritorious class and the takers upon the expiration of the life estates are likewise meritorious within the meaning of the equitable rule. Nor is any person contesting the exercise of the power entitled to do so under the settled principles of equity. Walter M. Cross is disputing only the quantum of his estate and, in fact, is seeking to defeat the interest of unborn children by his stance in this case, while Kent Cross Rigsby, although within the meritorious group, is not a child or grandchild wholly unprovided for. 2 J. Pomeroy, *supra,* at 596. The differences in the amount of the gift to Kent

Cross Rigsby as a grandson and the contingent gift to other grandchildren are entirely within the judgment of the testator. *Pomeroy, supra.*

The disposition that has been made of this case does not require that the issue of Kent Cross Rigsby's adoption and its effect upon his status be reached or decided. It is also true that the parties have proceeded upon the assumption that the surviving widow of Matthew Cross does not take because of the premarital agreement, and no issue is here presented or decided on that question.

The judgment of the trial court, based as it was upon common law principles and not a misstatement or misapplication of the law, is affirmed. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

SWOFFORD, C. J., and SHANGLER, PRITCHARD and SOMERVILLE, JJ., concur.

WASSERSTROM, J., dissents in separate dissenting opinion.

TURNAGE, J., dissents and concurs in separate dissenting opinion of WASSERSTROM, J.

WASSERSTROM, Judge, dissenting.

I respectfully dissent from the principal opinion for the following reasons: (1) The will of Mary Forbes Cross in my opinion is not ambiguous. (2) Section 347 Restatement of the Law of Property, is not in my opinion applicable to the facts of this case. For those reasons, it is my conclusion that Matthew Forbes Cross did not effectively exercise the power of appointment granted to him by his aunt Mary.

I.

The legal principle stands established beyond any possible question that a donor of a power of appointment may effectively restrict the manner in which that power may be exercised. That well settled proposition is in no way challenged by the respondents in this case nor by the principal opinion. Indeed, the principal opinion admits that it

"is clear that the first inquiry must be as to the intent of the donor as to the scope and manner of exercise of the power."

In this case, the donor Mary did restrict the manner in which the power could be exercised by specifying that Matthew's testamentary document had to make "specific reference to the power and to this will." The respondents concede that Matthew's will did not comply with that requirement. Thus, in their brief, respondents state: "We must frankly concede that the Last Will and Testament of Matthew Forbes Cross * * * does not, as such, specifically refer to the will of testator's aunt, Mary Forbes Cross." That concession (except for the contention of equitable aid to remedy the defective execution, discussed under Point II of this dissenting opinion), should end the matter. *Holzbach v. United Virginia Bank,* 216 Va. 482, 219 S.E.2d 868, l.c. 872 (1975) is directly in point and so holds. In that case, the donor's will provided that the power of appointment could be exercised "by specific reference to the powers granted herein" and the donee attempted to exercise the power in a bequest of all her "estate, be it real, personal or mixed, or in which I may have a power of appointment of whatsoever nature, kind or description * * *." The Virginia Court found that the attempted exercise just quoted did not meet the requirement of specific reference and that non-compliance by the donee with the requirement wholly defeated the exercise of the power. In reaching this conclusion the court held:

"When a donor imposes such a requirement [specific reference], a donee, who enjoys no title to donor's property, can make no valid appointment affecting that property unless he complies with donor's requirement.

"Pursuing his right to dispose of his property as he saw fit, donor created a power of appointment and selected the conduit through which it should pass. Upon the exercise of that power, he imposed a lawful requirement that his donee manifest on the face of her will an intent to exercise the power by making specific reference to the power created in his will. While donee's will makes general reference to powers of appointment, it makes no specific reference to donor, to his will, or to the power created by his will. We hold that donee's will failed to comply with donor's requirement and, therefore, failed to make an effective appointment of donor's property."

See also for a very similar holding, although on somewhat different facts, *Leidy Chemicals Foundation, Inc. v. First National Bank of Maryland,* 276 Md. 689, 351 A.2d 129 (Md.App.1976).

The principal opinion however, unlike the respondents themselves, refuses to concede that the attempted exercise of the power by Matthew was defective. To the contrary, the principal opinion argues that Mary did not in fact lay down a hard and fast requirement for a "specific reference" and that it should suffice to show that Matthew subjectively intended to exercise the power of appointment by his use of the blanket "all powers" clause of his will. In order to make this argument, the principal opinion concedes that, "[i]t must be conceded that before any construction of the will of Mary may be undertaken, an ambiguity, latent or patent, must be present requiring the construction of that instrument."

The principal opinion claims to find the requisite ambiguity by reason of the first sentence of paragraph C of Mary's will which provides that with respect to the powers of appointment granted therein, the Trustees "may" rely on any instrument admitted to probate in any jurisdiction as the last will of the donee of the power. It should be noted in passing that to make this argument, the principal opinion transmutes the permissive "may" which appears in paragraph C, to a mandatory term "are directed" which appears in the principal opinion's discussion. More importantly, the first sentence of paragraph C does not conflict, as the principal opinion supposes, with the specific reference clause. The former provision simply goes to the validity as a whole of a paper writing purporting to be a will and does not undertake in any way to deal with the interpretation of or enforcea-

bility of any particular provision contained in such instrument. Recognition by the trustees of the document probated as Matthew's will in no way controls whether or not that document effectively exercised the power of appointment in question.

The principal opinion seeks to bolster its finding of ambiguity by suggesting that one of the purposes of the specific purpose clause in Mary's will was "the possible easing of the uncertainty of the distributor of her estate." Accepting that as being one of the motivating reasons for including this clause, it is apparent that the way in which the task of the trustees was to be eased was to create an objective test, thereby eliminating the necessity for factual investigations bearing on the donee's subjective intention, arguments with the heirs and litigation in the courts. The interpretation reached by the principal opinion defeats that purpose.

For a proper comprehension of the purpose and reason for the use of the "specific reference" clause, some explanation of the practical background should be given. In recent years the power of appointment device has come to be increasingly used by draftsmen of wills. As a direct result of that, there has grown up a concomitant use of the so-called "all power" clause by which a testator undertakes to make a blanket exercise of any and all powers of appointment which he may have from any source. Because of the widespread use of this blanket clause by routine copying, many objectionable consequences have resulted. Thus, for example, 2 Appleman, Basic Estate Planning, 714–15 (1957) states:

"A blind exercise of unknown powers may, and often has, led to such unhappy results as these, which could be avoided if the facts were known: incurring unnecessary estate taxes; giving the property to the wrong people; making a disposition of the property which is either clearly invalid or of doubtful validity, thus causing complicated and expensive litigation."

A similar comment concerning the blanket exercise of powers of appointment appears in Casner, "Estate Planning-Powers of Appointment" 64 Harv.L.Rev. 185, l.c. 202 (1950).

Undertaking to cope with this problem, many estate planners have recommended that a will setting up a power of appointment also contain a requirement that the power can be exercised only by making specific reference to the donor's will. Some of the many texts recommending this specific reference clause in order to avoid the pitfalls of blind exercise and to avoid litigation over the effectiveness of a purported exercise are W. Schwartz, Future Interests and Estate Planning, Sec. 31.8 (1965); R. Wormser, Guide to Estate Planning 60 (1958); J. Johnson, A Draftman's Handbook for Wills and Trust Agreements 30; Mannheimer, "Marital Deduction" in 2 Basic Estate Planning 659, 684 (J. Appleman ed. 1957); Stein, "How to Provide for a Marital Deduction by Trust or Power of Appointment" in 1 Estate Tax Techniques 116.9, 134 (J. K. Lasser Tax Institute ed. 1973); W. Huff, "How to Use Trusts Under the Estate Tax Marital Deduction Provisions" in P–H Successful Estate Planning Ideas and Methods par. 5003.3 at 5064 (1969); Effland, "Power of Appointment-The New Wisconsin Law" 1967 Wis.L.R. 583, 585.

These specific reference clauses therefore have a definite, well reasoned purpose which is to insure a considered and intentional, rather than an inadvertent, exercise of the power. That purpose is accomplished by requiring a specific mention by the donee of the donor's will and the power, which serves as an objective test. To do as the principal opinion desires, and to permit the substitution of subjective intention in place of the objective test specified by the donor, would largely defeat the very purpose for which these clauses are used. Moreover, such an interpretation opens up a far ranging factual inquiry in each case similar in nature to the "staggering administrative problem" which the Missouri Supreme Court in a somewhat analogous situation thought it desirable to avoid. *Fabick and Co. v. Schaffner*, 492 S.W.2d 737, l.c. 745 (Mo.1973).

A very recent opinion by one panel of the North Carolina Court of Appeals, *First Union National Bank v. Moss*, 32 N.C.App. 499, 233 S.E.2d 88 (1977), has reached a result somewhat supporting the argument of the principal opinion. In that case, a husband and wife executed concurrent wills. That of the husband created a marital trust granting a power of appointment conditioned on the exercise making "specific reference" to the power. The wife's will contained a blanket exercise of "all powers." The court determined the term "specific reference" to be ambiguous and therefore to open the questions as to whether the wife had made a conscious, intentional exercise and whether that met the husband's intention.[1] Some factual differences could be mentioned distinguishing the *Moss* case from the one at bar, but essentially I disagree with the *Moss* decision. It is at war with *Holzbach v. United Virginia Bank, supra*, which *Moss* does not even cite; nor does *Moss* cite or discuss any of the other pertinent authority covered at length in both the principal opinion and the dissent in this case. To treat a requirement for "specific reference" as ambiguous is to devalue words to meaninglessness. Significantly, no one in this case has ever suggested that the requirements here of "specific reference to the power <u>and to this will</u>" (note that the underlined requirement was not present in *Moss*) is ambiguous.

In fact, it never occurred to anyone connected with this case, until the writing of the principal opinion in division, that the specific reference requirement of Mary's will was ambiguous in any respect. None of the trustees thought so; the trial court did not so find; and not even the appointees under Matthew's purported exercise of the power ever made any such suggestion. It seems a bit strange, if the will is in fact

ambiguous, that such an important fact had never been detected by the appointees, the ones who would directly benefit from such a determination, or by their extremely able counsel.[2]

Mary's will is, in my opinion, unambiguous. It calls for a specific reference in order for the power of appointment granted to be exercised. Concededly there was none. Accordingly the power of appointment was not effectively exercised.

## II.

As already stated, the respondents conceded in their brief that the requirement for a valid exercise of a power of appointment, that is a specific reference to the will and the power, was not met. However, they seek to escape the consequences of that failure by resorting to Sec. 347 of the Restatement of the Law of Property which provides:

> "Sec. 347. SUFFICIENCY OF APPOINTMENTS DEFECTIVE WITH RESPECT TO FORMALITIES.
>
> Failure of an appointment to satisfy formal requirements imposed by the donor does not cause the appointment to be ineffective in equity if
>
> (a) the appointment approximates the manner of appointment prescribed by the donor; and
>
> (b) the appointee is a wife, child, adopted child or creditor of the donee, or a charity, or a person who has paid value for the appointment."

The principal opinion, impliedly recognizing the tenuousness of its argument concerning the alleged ambiguity in Mary's will, adopts the Sec. 347 argument as an alternative route to an affirmance.

---

1. Incidentally, it should be noticed that *Moss* reaches its result in a marital deduction situation, thereby undercutting the insistence by the principal opinion here that a distinction should be made and strict interpretation applied in marital deduction wills, but not others.

2. Respondents' counsel, at the argument before this court en banc, did adopt an argument ad-

vanced in the divisional principal opinion that the term "deemed" as used in paragraph C of Mary's will was ambiguous. That argument, however, has now been abandoned by the majority of this court, as it should be in light of *Fabick and Co. v. Schaffner*, 492 S.W.2d 737, l.c. 745 (Mo.1973).

I have no quarrel with Sec. 347.[3] It merely codifies an old equity rule expressed in opinions from many jurisdictions and with which no jurisdiction disagrees.[4] The only trouble is that Sec. 347 and the equity rule on which it is based have no application to the facts of this case.

Section 347 has two major requirements for present purposes: (a) The defective exercise of the power must relate to a mere formality, not a matter of substance. 2 Pomeroy's Equity Jurisprudence Sec. 590, p. 595; 62 Am.Jur.2d Powers of Appointment and Alienation Sec. 102, p. 202; 72 C.J.S. Powers Sec. 48, p. 460. (b) The appointees under the power must be more "meritorious" than those who would take if the power is not given effect. 2 Pomeroy's Equity Jurisprudence Sec. 589, p. 593; 72 C.J.S., *supra*; V American Law of Property Sec. 23.44, pp. 576–77; *American Freehold Land Mortgage Co. v. Walker,* 31 F. 103 (Cir.Ct. S.D.Ga.1887).

With respect to the first of those requirements, the cases do not lay down any definition by which a formality can be readily marked off from a matter of substance. The only pattern which can be deduced from the cases is that the courts have sought to determine the seriousness and importance of the purpose designed to be served by the restriction. Many factors in the present situation go to indicate that the purpose of this restriction is quite serious and important. The background and basic

reason for these specific purposes clauses have already been discussed at some length in Section I of this dissenting opinion and need not be repeated.

The importance of these clauses has been recognized in unmistakable fashion by two state legislatures. Both New York and Wisconsin adopted statutes which dispensed with formalities and explicitly defined the methods by which power of appointment might be exercised. Experience and uncertainty created among the legal profession convinced the legislatures of those states that there should be no interference with continued effective use of specific reference clauses, and both states thereupon amended their respective statutes to so provide. N.Y. EPTL Sec. 10–6.1(b) (McKinney 1967); Wis.Stat.Ann.Sec. 702.03 (West Special Supp.1974). It is more than interesting to note that one of the leading writings in this field cited by the principal opinion, Rabin, "Blind Exercises of Powers of Appointment," 51 Cornell L.Q. 1, l.c. 14–16 (1965), in discussing statutes of this type, predicted that other states having legislation similar to the original New York and Wisconsin statutes would not construe those statutes to strike down this valuable drafting tool consisting of the specific purpose clause. That prediction proved true in Virginia. *Holzbach v. United Virginia Bank, supra.*[5]

That case squarely considered the interplay of a specific purpose clause and an attempted exercise by an all powers clause.

---

3. The principal opinion lays considerable emphasis on Sec. 341 of the Restatement, which was adopted by *Busch v. Dozier,* 375 S.W.2d 27 (Mo.1964). The principal opinion argues that "Section 341 cannot be adopted without, by implication, adopting Section 347." Assuming without necessarily agreeing with the soundness of the quoted argument, it has no relevancy to and does not answer this dissent. Wholly apart from Sec. 341, I readily agree that Sec. 347 should be adopted in Missouri. Reference to Sec. 341 is unnecessary to that conclusion. Nor is reference to Sec. 341 necessary for the purpose of this dissent, as bearing on the donee's intent to exercise the power, because this dissent is based on the donee's failure to comply with the objective standard created by the specific power clause and does not reach the question of what the donee's intent may have been.

4. Comment a under Sec. 347 states: *"Origin of the rule.* The rule stated in this Section arose in the English Courts of Chancery and is still expressed as a rule that 'equity will aid the defective execution of a power.' Such aid is given only for the benefit of certain classes of persons traditionally favored by courts of equity."

5. The Massachusetts cases cited by the principal opinion are clearly distinguishable from the present case. *Shine v. Monahan,* 354 Mass. 680, 241 N.E.2d 854 (1968) presented a situation where the donee had adequately made the required specific reference. In *McKelvy v. Terry,* 346 N.E.2d 912 (Mass.1976), no specific reference was required by the donor's will and thus an exercise omitting such reference could not be defective.

The *Holzbach* case already has been cited and quoted under Section I of this dissenting opinion. Although the *Holzbach* opinion does not mention Sec. 347 of the Restatement, nevertheless it should be noted that Virginia does follow the equitable principle codified by Sec. 347. *Justis v. English*, 30 Gratt. (71 Va.) 565 (1878). If the Virginia Supreme Court had considered the specific purpose clause to be in the nature of a mere formality, it surely would have applied the equity rule on which Sec. 347 is founded and which has for so long been a part of the Virginia law. Probably the reason that the *Holzbach* opinion makes no reference to either Sec. 347 or the old equitable principle is that the basic doctrine is now substantially covered by a special Virginia statute, Code 1950 Sec. 64.1–50, which cures noncompliance with an "additional or other form of execution or solemnity" other than those which would be required to dispose of the donee's own property. The Virginia Supreme Court specifically held the specific reference clause "is not within the intendment" of that statute.

It would be a cruel irony indeed if the courts were to treat an "all powers" clause as effectively exercising a power of appointment specifically drawn to require specific reference, for the very purpose of inclusion of the latter clause would be defeated. If the number of texts recommending such clauses is any indication, quite a number of estate plans would be vulnerable to unforeseen disruption. In light of the purpose of specific reference clauses, the attempt by Matthew to exercise the power by purporting to include "all property over which I have power of appointment" in his residuary clause should be deemed ineffective in that it fails to meet the requirement set up in the will of Mary Forbes Cross that an effective exercise must make "specific reference to the power and to this will." The defect in execution should be treated as substantive and not merely formal, which renders inapplicable the equitable doctrine encompassed by Sec. 347 of the Restatement of Property.

Likewise, the second requirement for the application of Sec. 347 fails to be met by the facts of this case. True enough, the appointees named by Matthew are sons and grandchildren, so that they probably all qualify as "meritorious appointees," traditionally favored by courts of equity. However, they are the very same ones who will take upon failure of the power of appointment. These very same individuals can be no more meritorious in one capacity than in the other. Inasmuch as the appointees are no more meritorious than those designated to take upon failure of the power, there is no basis upon which equity can make a preference.

This point was directly litigated in *Rogers' Estate*, 31 Pa.Super. 620, 621 (1906), in which the court held, "The appointees here, who must ask the aid of equity, are mere volunteers, collateral relatives, in precisely the same class as, and having but equal equities with, those who will take in case the appointments fall. This being the situation, the defective execution of the power would not be aided, even if the donee's transgression could be viewed as a matter of mere form and unsubstantiality. * * [E]ven supposing, for argument's sake, that grandchildren fall under the same rule as children, there would be no reason for an interposition here, because in default of an appointment the estate would go to grandchildren, so that the equity of the contending parties would be equal." Rather than invoke the power of a court to aid defective execution of a power, in a case such as this it constitutes the greater wisdom to heed the equitable maxim, "Where there is equal equity, the law must prevail."

### III.

Respondents contend that even if the power of appointment was not effectively exercised, nevertheless Kent Forbes Cross Rigsby cannot participate in the distribution because he is not within the class of Matthew's heirs designated by Mary's will as the distributees to take in default of appointment. They base their contention upon the fact that in 1962, Kent was adopted by his mother's second husband and that

he was therefore in effect removed from Matthew's blood line by the time Matthew died in 1970.

The principal opinion does not reach and therefore does not decide that issue. Under my analysis, that issue is before the court for necessary decision. However, since the majority does not discuss the matter, it would be inappropriate and purely academic for this dissent to do so.

For the reasons stated, I would reverse the judgment.

TURNAGE, J., concurs in dissent.