In the Matter of Michael H. BRAMS TRUST #2 Created Under the Last Will and Testament of Harriett Brams dated July 13, 1992, Respondent,

v.

George R. HAYDON, Jr., Co–Trustee and UMB Bank, N.A., Co–Trustee, Appellants.

No. WD 68546.

Missouri Court of Appeals, Western District.

Sept. 16, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 2008.

John M. Waldeck, Leawood, KS, for Respondent.

Marc D. McKay, Kansas City, for Appellants.

Before JAMES E. WELSH, P.J., PAUL M. SPINDEN and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

This appeal is related to *In re Harriett Brams Trust*, 266 S.W.3d 300 (2008), also decided today. As in that case, Appellants George R. Haydon, Jr. and UMB Bank, N.A. (the "Trustees") appeal the trial court's judgment terminating a non-charitable irrevocable trust in response to a petition filed by Respondent Michael Brams. We reverse and remand.

## I.  Facts and Proceedings Below.

Like the trust at issue in *Harriett Brams Trust*, Michael H. Brams Trust # 2 was created under the Last Will and Testament of Harriett Brams dated July 13, 1992. Mrs. Brams died on November 6, 2002.

Pursuant to Article SIXTH of Mrs. Brams' Will, the Trustees are granted full power and authority to distribute net income from Trust # 2 to Mr. Brams (as the preferred beneficiary) and to Brenda Brams, or to invade the principal to the extent net income proved insufficient, "as the Trustees in their absolute discretion deem necessary or advisable for the health, education, support, maintenance and general welfare" of Mr. Brams and Brenda Brams. Mr. Brams is Harriett Brams' grandson; Brenda Brams is her daughter-in-law.

Article SIXTH of the Will further requires the Trustees to distribute the principal of the trust estate to Mr. Brams in stages: one-third of the remaining principal of the trust estate when he reached age 30; one-half of the remaining principal

when he turned 35; and the entire remaining principal when Mr. Brams turned 40.[1]

Article SIXTH of Mrs. Brams' Will further provides that, if Mr. Brams dies before the age of 40, Trust # 2 will terminate, and the trust property will be distributed to those Mr. Brams appoints by will. More specifically, Article SIXTH confers upon Mr. Brams the power to appoint the trust property "to or for the benefit of such person or persons (including if he directs, his estate or his executors or administrators) ... on such terms and conditions and with such powers in such persons as my said grandson shall by last will and testament prescribe." If Mr. Brams were to die before the age of 40 without exercising the power of appointment, the trust estate is to be distributed to Mr. Brams' "then living issue, per stirpes, but if no descendant of [Mr. Brams] of any degree is then living," then half of the trust estate is to be distributed to the then living issue of Ruth Small Helfgott, Mrs. Brams' sister-in-law, per stirpes, with the other half (or all of the trust estate, if there are no living descendants of Ms. Helfgott) to the Dr. Leon and Richard Brams Covenant House Dental Fund.

On December 12, 2005, Mr. Brams filed a petition seeking to terminate Trust # 2 in the Circuit Court of Jackson County. At the time the Petition was filed, Mr. Brams was 32 years old.

■ Mr. Brams' petition sought relief under § 456.590.2.[2] As explained in *Harriett Brams Trust,* in order to terminate a

trust under § 456.590.2, two conditions must be satisfied: (1) all non-disabled adult beneficiaries must consent; and (2) the court must find that "the disabled, minor, unborn and unascertained beneficiaries" of the trust "will benefit" from termination.

In his Petition, Mr. Brams alleged that he "currently has no living descendants and there are no living permissible distributees of [Trust # 2] other than Michael H. Brams and Brenda Brams." Mr. Brams further stated that a Waiver of Service of Process and Notice of Hearing, Consent to Immediate Hearing and Consent to Termination of Trust were executed by Respondent Brenda Brams and by "each such contingent remainderman other than Loren Abel," Ms. Helfgott's daughter.[3] Mr. Brams further stated that "Loren Abel has not consented to the Petition, nor has she waived service of process or notice of hearing." Mr. Brams alleged that Ms. Abel's consent to the Petition was unnecessary because the power of appointment conferred upon him by the Will allowed him to bind and represent Ms. Abel with respect to the termination of Trust # 2, pursuant to § 456.3–302. Mr. Brams also alleged that his § 456.3–302 power made it unnecessary for "anyone to represent the interests of any unborn or unascertained persons who may otherwise be interested in [Trust # 2]."

The proceedings in the circuit court in this case followed a similar path to those in *Harriett Brams Trust.* On March 13,

---

1. If Mr. Brams had already turned 35 at the time the trust was established, two-thirds of the trust's principal was to be distributed to him at that time.

2. Citations to § 456.590 are to RSMo 2000. With that exception all statutory references are to RSMo 2000 and Cum.Supp.2007 unless otherwise indicated.

3. There is some confusion in the record concerning the spelling of Ms. Abel's first and last names. We adopt the spellings used by the parties below and (in the main) in their appellate briefing.

2006, the Trustees filed a Motion arguing that Ms. Abel was a necessary party. The trial court held a hearing on the Trustees' Motion on February 21, 2007, and denied the Motion in an order entered on March 14, 2007.

That same day, the trial court also entered an Order for Termination of Trust # 2. As in the related case, the trial court entered this termination order without a pending motion requesting termination, without notice to the parties, and without an evidentiary hearing. The termination Order contains no finding that the unborn and unascertained beneficiaries of Trust # 2 would benefit from early termination of the trust, nor any finding that all adult beneficiaries of the Trust had consented to its termination.

On April 27, 2007, the Trustees filed a Motion to Reconsider. The trial court denied reconsideration on June 15, 2007, referring to its order denying reconsideration in the related case. This appeal followed.

## II. Analysis

The Trustees argue that the trial court erred in terminating Trust # 2 because the statutory requirements of § 456.590 have not been met: (1) all of the adult beneficiaries of the Trust did not consent to its termination; and (2) Mr. Brams failed to plead, or present evidence to support a finding, that termination would benefit the unborn and unascertained beneficiaries of the Trust. We agree.

As explained in *Harriett Brams Trust*, we review *de novo* the trial court's construction of the governing statutes and the provisions of Mrs. Brams' Will.[4]

### A. The Circuit Court Erred in Terminating the Trust on the Basis that Ms. Abel's Lack of Consent is Irrelevant.

The trial court relied on the breadth of Mr. Brams' power of appointment to find that he could consent to trust termination on Ms. Abel's behalf, despite her apparent opposition.

■ Before addressing the substance of this issue, we must resolve some confusion concerning which statutory provisions apply here. The trial court held that the question whether Mr. Brams could represent and bind Ms. Abel was to be decided under former § 456.490, RSMo 2000, the virtual representation provision in effect prior to adoption of the Missouri Uniform Trust Code (the "MUTC") in 2004. Section 456.4–411B.4, the MUTC provision governing termination of irrevocable trusts, provides that "[t]he provisions of section 456.590 shall apply to all trusts that were created under trust instruments that became irrevocable prior to January 1, 2005." Relying on this provision, the trial court concluded that "the provisions of the MUTC are not applicable to Trust # 2."

Although the trial court concluded that this case is governed *in toto* by pre-MUTC law, the MUTC provision addressing the act's "Application to existing relationships" specifies that—subject to specific exceptions—the MUTC applies to *all* trusts, including those which became irrevocable prior to the MUTC's enactment:

> 1. Except as otherwise provided in sections 456.1–101 to 456.11–1106, on January 1, 2005:

---

4. As in *Harriett Brams Trust*, Mr. Brams argues that the Trustees' reconsideration motion and notice of appeal were untimely, and that the Trustees failed to preserve their sub-stantive arguments. We reject Mr. Brams' arguments for the reasons given in the related case.

(1) Sections 456.1–101 to 456.11–1106 apply to all trusts created before, on, or after January 1, 2005 . . . .

§ 456.11–1106. Under § 456.11–1106, then, the MUTC's provisions *do* apply generally to trusts created prior to January 1, 2005, "[e]xcept as otherwise provided" in the MUTC itself. Section 456.4–411B.4 creates such an exception, specifying that § 456.590—rather than § 456.4–411B—continues to provide the substantive standard for termination of a noncharitable irrevocable trust "created under [a] trust instrument[ ] that became irrevocable prior to January 1, 2005." Nothing in the statute prevents the MUTC's virtual representation provisions (§§ 456.3–301 through 456.3–305) from applying to such a trust alongside § 456.590, however. We accordingly conclude that Mr. Brams' ability to represent and bind others is governed by the MUTC, not by former § 456.490, RSMo 2000.

■ Two provisions of the MUTC are of principal relevance in determining whether Mr. Brams could represent Ms. Abel in this proceeding. First, § 456.3–302 provides:

The holder of a testamentary power of appointment may represent and bind persons whose interests, as permissible appointees, takers in default, or otherwise, are subject to the power.

In this section "testamentary power of appointment" means a testamentary power of appointment exercisable without the consent of the creator of the power or person holding an adverse interest in favor of:

(1) a class of appointees that includes the holder, the holder's estate, the holder's creditors, or the creditors of the holder's estate; or

(2) all persons other than the holder, the holder's estate, the holder's credi-tor's [sic], or the creditors of the holder's estate.

Second, § 456.3–301.2 provides that

[t]he consent of a person who may represent and bind another person under sections 456.3–301 to 456.3–305 is binding on the person represented unless the person represented objects to the representation before the consent would otherwise have become effective.

Although it believed that the issue was governed by pre-MUTC law, the circuit court also analyzed the virtual representation issue on the assumption that the MUTC applied. The court held that § 456.3–301 could not limit the ability of a holder of a "testamentary power of appointment" to represent or bind others under § 456.3–302. The court stressed that, unlike the recommended text of the Uniform Trust Code, Missouri's adoption of § 456.3–302 eliminated language prohibiting the holder of a testamentary power from representing or binding others if a conflict of interest existed. The court noted that the Trustees argued that § 456.3–301 limited a testamentary power holder's actions under § 456.3–302. The court then reasoned:

A literal reading of this language [of § 456.3–301.2] would suggest that [the Trustees] are correct. However, the first rule of statutory construction is to determine and give effect to legislative intent. The language of § 456.3–301.2 is specific and restricts the ability of a holder of a power of appointment to bind a taker in default under the more general statute, § 456.3–302. Nevertheless, even where the language of a statute is unambiguous on its face, when it produces an illogical or absurd result in light of the statute's purpose, the court must resort to rules of construction.

It is illogical for the Legislature to provide that the holder of either a gen-

eral or broad special power of appointment may represent and bind a taker in default of such power where there is an actual conflict of interest but not where the taker in default objects in advance of being represented by the holder of the power.... If a serious matter like conflict of interest is not a valid objection to the taker in default being represented by the holder of a power to which his or her interest is subject, on what grounds could the taker in default have a valid objection?

The trial court concluded that the "illogical result" advocated by the Trustees created an ambiguity in the statute, necessitating resort to the canon that the MUTC's provisions should be harmonized if possible. It then concluded:

> The provisions of MUTC § 456.3–301.2 can be harmonized with § 456.3–302 only by construing the former as applicable solely to takers in default who have a protectable interest [*i.e.*, those whose interests cannot be extinguished by a power of appointment].[5] To find otherwise is to 1) allow a taker in default to interfere with the ownership interest of the holder of the power of appointment; and, 2) ignore the Legislature's comment to 3–302 that the plenary nature of a general or broad special testamentary power renders moot any conflict of interest between the holder of the power and the taker in default for representation purposes. Construing § 456.3–301.2 as limited to takers in default with a protectable interest is also consistent with [the] result that would be obtained if RSMo. [2000] § 456.490 were still in existence. The consistency between the pre-MUTC statute and the above construction of § 456.3–301.2, and

the harmonious interplay between § 456.3–302 and the above construction of 3–301.2, is compelling evidence that this Court's interpretation has captured the intent of the Legislature.

█ The circuit court's analysis ignores a fundamental principle of statutory construction: although in interpreting statutes courts strive to give effect to the legislature's intent, "[t]he primary rule of statutory construction requires a court to determine legislative intent by considering the plain and ordinary meaning of words used in the statute." *Kinder v. Mo. Dep't of Corr.*, 43 S.W.3d 369, 372 (Mo.App. W.D. 2001). "When the language of a statute is clear and unambiguous, there is no room for construction." *Id.*; *see also Painter v. Mo. Comm'n on Human Rights*, 251 S.W.3d 408, 413 (Mo.App. W.D.2008).

As the circuit court itself recognized, "[a] literal reading of this language [of § 456.3–301.2] would suggest that [the Trustees] are correct." That statute unambiguously provides that "[t]he consent of a person who may represent and bind another person under sections 456.3–301 to 456.3–305 is binding on the person represented unless the person represented objects to the representation before the consent would otherwise have become effective." § 456.3–301.2. That language unambiguously applies to virtual representation under § 456.3–302 (which falls within the range of "sections 456.3–301 to 456.3–305"), and it unambiguously limits virtual representation where "the person represented objects to the representation" in a timely fashion. The ability to object and defeat virtual representation is not limited to persons holding "protectable interests" in trust property, and the circuit court

---

**5.** Relying primarily on pre-MUTC law, the court determined that Ms. Abel did not possess a "protectable interest" in the Trust property because Mr. Brams' exercise of his broad power of appointment could destroy Ms. Abel's interest.

erred by reading such a qualification into the statute.

Although the circuit court itself acknowledged this "literal reading," it felt compelled to reject it because it believed that "literal reading" led to "an illogical or absurd result." We acknowledge that, when a statute's "plain meaning would lead to an illogical result," other aids to construction, including the "objectives to be accomplished through the statute[,] may be considered." *Anderson v. Ken Kauffman & Sons Excavating, L.L.C.*, 248 S.W.3d 101, 109 (Mo.App. W.D.2008) (en banc). But this is not the rare case where the plain meaning of a statute's words would "render the entirety of [a statute] meaningless and superfluous." *Id.* Rather, §§ 456.3–301.2 and 456.3–302 can operate together: § 456.3–302 allows the holder of a "testamentary power of appointment" to act for and bind parties whose interests are subject to the power, unless those parties actively object to the representation. While this may limit the circumstances in which virtual representation will in fact be available, each statute retains meaning and effect.[6] While the circuit court may well be correct, as a policy matter, that the legislature's objectives could be more fully

achieved if the § 456.3–301 limitations on a testamentary power holder's virtual representation were removed, we are constrained to apply the statute as written, leaving the assessment of the relative policy benefits of any statutory amendment to the legislature.[7]

Because it concluded that the breadth of Mr. Brams' power of appointment denied Ms. Abel a "protectable interest" in the trust assets, the trial court concluded that § 456.3–301.2 could not limit Mr. Brams' ability to represent Ms. Abel in this trust termination proceeding pursuant to § 456.3–302. The court concluded that Mr. Brams "is able to represent the interests of all takers in default, including Lauren Able [sic] and *notwithstanding her opposition to termination of the Trust.*" (Emphasis added.)[8] As we have held, however, Mr. Brams' ability to serve as the virtual representative of the Trust's adult beneficiaries *is* limited by the plain language of § 456.3–301.2, which denies him that ability where "the person represented objects to the representation before the consent would otherwise become effective."

Mr. Brams' Petition itself alleges that Loren Abel did not consent to the termi-

6. We note that the proviso allowing represented parties to object to virtual representation was intended to serve its own important policy objectives: according to the Uniform Trust Code comment, this provision "implements cases such as *Barber v. Barber*, 837 P.2d 714 (Alaska 1992), which held that the a[sic] refusal to allow an objection by an adult competent beneficiary violated due process."

The official comments to the Uniform Trust Code (on which the MUTC is based), as well as the drafters' comments to the MUTC as enacted, are contained in Chapter 456, Missouri Revised Statutes, Including the Missouri Uniform Trust Code with the 2006 Technical Corrections, published by The Missouri Bar, Probate and Trust Committee.

7. Both the circuit court, and Mr. Brams on appeal, cite to *Cross v. Cross*, 559 S.W.2d 196,

204 (Mo.App.1977), and similar cases, for the proposition that due to the breadth of the rights granted to the holder of a general power of appointment, the holder is essentially the owner of trust property in fee. But none of those cases involves the interpretation of the specific provisions of Missouri's trust statutes which govern our decision here. We also note that the relevant statement in *Cross* was unsupported by citation, and was not made in the context of a trust termination to which at least one competent adult beneficiary has apparently objected.

8. The quoted statement appears in an order denying reconsideration in a related case, which the court incorporated by reference into its Order Denying Reconsideration in this case.

nation of the Trust, and his brief here states that "she objected to the termination of the trust." The circuit court likewise referred to "her opposition to termination of the Trust." The record on appeal does not contain any evidence concerning Ms. Abel's position. And because it found § 456.3–301.2 irrelevant here, the circuit court never made any finding as to whether Ms. Abel has in fact objected to Mr. Brams' representation of her in a timely fashion.

Given the allegations of Mr. Brams' Petition and appellate briefing, and the circuit court's own characterization of Ms. Abel's "opposition to termination of the Trust," we conclude that the circuit court erred in terminating the Trust on the basis that Mr. Brams could consent on Ms. Abel's behalf without regard to whether she had objected to his representation of her. We must therefore reverse the circuit court's judgment terminating the Trust. On remand, the circuit court will have the opportunity to determine whether Ms. Abel has in fact interposed a timely and effective objection to the consent to trust termination which Mr. Brams has attempted to give on her behalf, and therefore whether Mr. Brams is barred by § 456.3–301.2 from virtually representing her in this proceeding. We note that the burden is on Mr. Brams to show that he has satisfied the requirements of § 456.590.2, and is therefore entitled to trust termination. *See Brock v. Blackwood*, 143 S.W.3d 47, 57 (Mo.App. W.D. 2004). This includes the burden to prove that all non-disabled adult beneficiaries have consented, either on their own behalf, or by way of Mr. Brams' virtual representation under § 456.3–302.[9]

**B. The Circuit Court Erred in Terminating the Trust in the Absence of Evidence Satisfying § 456.590.2's Requirement of Benefit to Unborn or Unascertained Beneficiaries.**

■ The circuit court also held that it was irrelevant whether unborn or unascertained beneficiaries derived any benefit from termination of the Trust, again based on its conclusion that Mr. Brams held a "testamentary power of appointment" under § 456.3–302 which could extinguish their interests. We conclude, however, that the fact that Mr. Brams may have the power to represent and bind unborn and unascertained beneficiaries does not eliminate the need for the petitioner to present evidence which would permit the court to "find[ ] that such [termination] will benefit the [trust's] . . . unborn and unascertained beneficiaries." § 456.590.2.

Section 456.590.2 provides, in full:

When all of the adult beneficiaries who are not disabled consent, the court may, upon finding that such variation will benefit the disabled, minor, unborn and unascertained beneficiaries, vary the terms of a private trust so as to reduce or eliminate the interests of some beneficiaries and increase those of others, to change the times or amounts of payments and distributions to beneficiaries, or to provide for termination of the trust at a time earlier or later than that specified by the terms.

The statute draws a clear distinction between the *consent* of non-disabled adult trust beneficiaries—which is self-executing without court action or inquiry—and a court *finding* that unborn and unascertained beneficiaries will in fact receive a benefit from trust termination or modifica-

---

9. Ms. Abel was plainly a "beneficiary" of the trust whose consent was required. *See* § 456.1–103(3)(a) (beneficiary defined to in-clude "a person that: (a) has a present or future beneficial interest in a trust, vested or contingent").

tion. Mr. Brams' argument essentially asks us to read "consent" (of non-disabled adults) and a court "finding" (as to the unborn and unascertained) as equivalent. We decline to do so; instead, the different wording used by the legislature plainly suggests that affirmative action by the court is required to determine whether unborn or unascertained beneficiaries "will benefit" from trust termination, whatever position the litigants—including virtual representatives of such beneficiaries—may choose to take. *Cf. Jantz v. Brewer*, 30 S.W.3d 915, 918 (Mo.App. S.D.2000) ("the legislature is presumed ... to act intentionally when it includes language in one section of a statute but omits it from another").

This Court's decision in *Hamerstrom v. Commerce Bank of Kansas City, N.A.*, 808 S.W.2d 434 (Mo.App. W.D.1991), supports the conclusion that mere consent to trust termination by unascertained or unborn beneficiaries, expressed through a virtual representative, does not obviate the need for a petitioner to show that those beneficiaries will be benefited by trust termination. *Hamerstrom* notes that Missouri had initially adhered to the "*Claflin* rule" (*Claflin v. Claflin*, 149 Mass. 19, 20 N.E. 454 (1889)), under which "a trust cannot be terminated prior to the date specified by the terms of the trust where the material purpose of the settlor has not been attained, even if all the beneficiaries consent to its termination." *Hamerstrom*, 808 S.W.2d at 436 (citing *Thomson v. Union Nat'l Bank*, 291 S.W.2d 178, 182–83 (Mo. 1956)). *Hamerstrom* recognized that the 1983 adoption of § 456.590 "modifie[d] the *Claflin* rule." *Id.* Nevertheless, *Hamerstrom* makes clear that a *judicial finding* of benefit to unborn and unascertained beneficiaries remains necessary:

> The statute provides a mechanism for "adult beneficiaries who are not disabled" to vary, extend or eliminate a

trust under circumstances where the settlor's purpose is not considered. However, deviation is precluded when certain classifications of protected beneficiaries exist and *a court has not found that those variations* desired by the qualified adult beneficiaries *would benefit the protected beneficiaries*.

808 S.W.2d at 436 (emphasis added).

The MUTC's new trust modification and termination provisions do not apply here, for reasons discussed above. Nevertheless, it is noteworthy that those provisions draw a clear distinction between the modification of a trust "upon consent of the settlor and all beneficiaries, without court approval," § 456.4A–411.1, and modification or termination of a trust where unborn or unascertained beneficiaries are involved. In the latter situation, in addition to the consent of competent adults, the court must make a "finding that the interest of any nonconsenting beneficiary will be adequately protected." § 456.4B–411.1. The Missouri comment to these provisions (*see supra* note 6) refers to § 456.4A–411 as "non-judicial termination or modification," while § 456.4B–411 creates a mechanism for "judicial modification or termination." The comment states that, by adopting § 456.590.2, Missouri "chose to allow adult beneficiaries to modify trusts by consent so long as beneficiaries not directly represented received benefit." The comment also addresses the fact that courts may not have treated § 456.590.2's requirement of a court "finding" sufficiently rigorously, because of the perceived rigidity of the "benefit" requirement:

> Experience with Section 456.590.1 R.S.Mo., however, raised practical concerns that are addressed in MUTC Section 456.4–411B.1. First, there is concern whether there has been a true analysis of the benefit of the variation or termi-

nation to the minor, unborn, or unascertained beneficiaries in actions brought under Section 456.590.2. Assuming all adult beneficiaries have consented, this is the only true statutory requirement for a successful action. Faced with the consent of all adult beneficiaries, a judge may view the matter as similar to the entry of a consent judgment.

Those classes of beneficiaries who are either unrepresented or deemed represented by others will almost invariably be the remainder beneficiaries whose interests may be extinguished by a trust termination. To address this concern MUTC Section 456.4–411B.1 requires that a court find that the interests of the minor, unborn, and unascertained beneficiaries be adequately protected by any proposed variation or termination. This should afford parties to a section 456.590.2 action and the court more flexibility in crafting remedies instead of applying a rigid "benefits" test to terminations or modifications.

This comment clearly assumes that, whether unborn and unascertained beneficiaries are virtually represented or not, the court must conduct "a true analysis of the benefit" of trust modification or termination on such beneficiaries; it may *not* simply "view the matter as similar to entry of a consent judgment." Yet that is what Mr. Brams' argument would portend: his holding of a "testamentary power of appointment" under § 456.3–302 would render *any* independent judicial assessment unnecessary (or even improper).

Thus, quite apart from the questions surrounding Ms. Abel's position on trust termination, this case must be reversed and remanded to the trial court because it erroneously excused Mr. Brams from

showing, as mandated by statute, that termination of the Trust "will benefit the [trust's] disabled, minor, unborn and unascertained beneficiaries." [10]

## III. Conclusion.

The judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

All concur.

---

**10.** For the reasons discussed in *Harriett Brams Trust,* No. WD68545, we reject Mr. Brams' alternative arguments based on the

purported applicability of §§ 456.3–303, 456.3–304 and/or 472.300.