**In The Matter of The Harriett BRAMS TRUST Created Under the Last Will and Testament of Harriett Brams Date July 13, 1992, Michael H. Brams, Individually as Beneficiary of the Harriett Brams Trust Created Under the Last Will and Testament of Harriett Brams, Date July 13, 1992, Respondent,**

v.

**George R. HAYDON, Jr., Co–Trustee, and UMB Bank, N.A., Co–Trustee, Appellants.**

No. WD 68545.

Missouri Court of Appeals, Western District.

Sept. 16, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 2008.

case.

See also, 266 S.W.3d 307.

John M. Waldeck, Leawood, KS, for respondent.

Marc D. McKay, Kansas City, MO, for appellants.

Before JAMES E. WELSH, P.J., PAUL M. SPINDEN and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Appellants George R. Haydon, Jr. and UMB Bank, N.A. (the "Trustees") appeal the judgment of the trial court terminating the Harriett Brams Trust pursuant to Respondent Michael Brams' request. For the reasons set forth below we reverse, and remand to the trial court for further proceedings.

## I. Facts and Proceedings Below.

The Harriett Brams Trust was created upon Harriett Brams' death on November 6, 2002, pursuant to Article SEVENTH of her Last Will and Testament dated July 13, 1992.[1] Article SEVENTH provides in relevant part:

The HARRIETT BRAMS TRUST shall be separately held and distributed upon the following terms and limitations:

(1) The Trustees shall have full power and authority at any time and from time to time to distribute such amounts or all of the net income derived from the trust estate ... for the benefit of my grandson, MICHAEL H. BRAMS....

(2) Upon the death of my grandson, MICHAEL H. BRAMS, or upon my death if my said grandson does not survive me, the trust estate shall terminate. [A]ll undistributed net income shall be added to principal and the entire then remaining principal of the trust estate *shall be distributed to or for the benefit of such descendants of any degree of my said grandson,* any one or more of them exclusively of the others, born or unborn, in such proportions or amounts, upon such lawful estates and interests, outright or in trust, and on such terms

and conditions and with such powers in such persons *as my said grandson shall by last will and testament prescribe*; PROVIDED, that such will must specifically refer to this power, and general language shall be insufficient to exercise the same; and PROVIDED FURTHER, that notwithstanding any foregoing provisions hereof to the contrary, *this power shall not be exercisable to any extent, directly or indirectly, in favor of my said grandson, his estate, his creditors or the creditors of his estate.* To the extent such power of appointment is not exercised, the unappointed principal of the trust estate remaining at the death of my said grandson, if any, or if my said grandson does not survive me, the trust estate as constituted at the time of my death, shall be distributed to my said grandson's then living issue, per stirpes.

(Emphasis added.)

On December 12, 2005, Mr. Brams filed a petition seeking to terminate the Harriett Brams Trust in the Circuit Court of Jackson County. Mr. Brams' Petition invoked the Court's authority under § 456.590.2, RSMo 2000,[2] which provides:

When all of the adult beneficiaries who are not disabled consent, the court may, upon finding that such variation will benefit the disabled, minor, unborn and unascertained beneficiaries, vary the terms of a private trust so as to reduce or eliminate the interests of some beneficiaries and increase those of others, to change the times or amounts of payments and distributions to beneficia-

---

**1.** Two other trusts were created by Harriett Brams' Will: Michael H. Brams Trust # 1 (created by Article FIFTH) and Michael H. Brams Trust # 2 (created by Article SIXTH). Michael H. Brams Trust # 2 was also terminated by the circuit court, and is the subject of a separate appeal decided today, *In re*

*Michael Brams Trust # 2,* 266 S.W.3d 307 (2008).

**2.** Citations to § 456.590 are to RSMo 2000. All other statutory references are to RSMo 2000 and Cum.Supp.2007.

ries, or to provide for termination of the trust at a time earlier or later than that specified by the terms.

At the time the Petition was filed, Mr. Brams was 32 years old. He presently has no children.

On March 13, 2006, the Trustees filed a Motion arguing that Mr. Brams should be required to join Ruth Small Helfgott, Harriett Brams' sister-in-law, as a necessary party to the action. The trial court held a hearing on the Trustees' Motion on February 21, 2007, and denied the Motion on March 14, 2007. That ruling is not at issue in this appeal.

On the same day that it denied the Motion to join Ms. Helfgott, the trial court also entered an Order for Termination of Trust. At the time the termination order was entered, there were no pending motions requesting that relief, and no evidentiary hearing had been held as to the propriety of terminating the trust. Despite the requirements of § 456.590.2, the termination Order contains no finding that the unborn and unascertained beneficiaries of the Harriett Brams Trust would benefit from early termination.

■ On April 27, 2007, the Trustees filed a Motion to Reconsider. The trial court denied reconsideration on June 15, 2007, reasoning that, because Mr. Brams held a testamentary power of appointment under § 456.3–302, a finding pursuant to § 456.590.2 that unborn or unascertained beneficiaries would benefit from trust termination was unnecessary. This appeal followed.[3]

## II. Analysis

In their sole Point on appeal, the Trustees contend that the trial court erred in terminating the Harriett Brams Trust because it erroneously held that Mr. Brams was not required to show that termination would benefit the unborn and unascertained beneficiaries of the Trust. We agree.[4]

---

3. Mr. Brams argues that the Trustees' April 27, 2007 Motion for Reconsideration was untimely because the March 14, 2007 termination order was final and appealable when entered. As Mr. Brams acknowledges, however, this Court has already determined that final judgment was not entered until the trial court signed a document denominated "Judgment" on July 26, 2007. See Rule 74.01; Spiece v. Garland, 197 S.W.3d 594, 595–96 (Mo. banc 2006). While § 472.160 allows appeal from certain orders of the probate division of the circuit court despite the fact that they are not denominated a "judgment," In re Estate of Clark, 83 S.W.3d 699, 702 (Mo.App. W.D.2002), the trial court's order terminating the Harriett Brams Trust does not fall within the enumeration of appealable orders in § 472.160.1(1)-(13). Further, the termination order was not "a final order or judgment of the probate division of the circuit court under this code" within the meaning of § 472.160(14) (emphasis added), because the "code" is defined to include only chapters 472 through 475, see § 472.010(5), and the circuit court here acted under provisions of

chapter 456. Thus, because the March 14, 2007 order was not immediately final, the Trustee's Motion for Reconsideration was timely filed. The Trustees' Notice of Appeal was also timely, since it was filed on June 26, 2007, before the entry of the final judgment on July 26, 2007; under Rule 81.05(b), this premature notice of appeal was deemed filed immediately following entry of judgment.

4. We reject Mr. Brams' assertion that the Trustees waived this argument. The Trustees' Answer alleged as an affirmative defense that Mr. Brams could not make a showing that termination of the trust would benefit unborn and unascertained beneficiaries. Moreover, the trial court entered its termination order without notice, an evidentiary hearing, or a motion seeking that relief, giving the Trustees no opportunity to further argue the issue before the termination order was entered. In these circumstances, the Trustees did not waive the issue when they briefed it at length in their reconsideration motion, and the trial court addressed the argument on the merits without suggesting it was untimely.

## A. Standard of Review

■ Because resolution of this appeal involves the interpretation of Missouri's trust statutes and the provisions of Harriett Brams' Will establishing the Trust, our review is *de novo.* "An appellate court will conduct de novo review of questions of law, which includes determination of the meaning of a trust instrument, and give no deference to the trial court's judgment in such matters." *Betty G. Weldon Revocable Trust v. Weldon,* 231 S.W.3d 158, 173 (Mo.App. W.D.2007).

## B. Mr. Brams Did not Possess a "Testamentary Power of Appointment" under § 456.3–302.

■ The trial court granted Mr. Brams' Petition to terminate the Harriett Brams Trust under § 456.590.2, which requires (1) that "all of the adult beneficiaries who are not disabled consent," and (2) that the court "find[ ] that such variation will benefit the disabled, minor, unborn and unascertained beneficiaries." [5]

As the only adult beneficiary, Mr. Brams' consent to the termination of the Trust satisfies the first requirement of § 456.590.2.[6] With respect to the second requirement, the trial court concluded that it was not required to make a separate finding of benefit to unborn or unascertained beneficiaries, because Mr. Brams possessed a "testamentary power of appointment" over the Trust's assets within the meaning of § 456.3–302, and therefore Mr. Brams could virtually represent—and bind—the Trust's unborn and unascertained beneficiaries.

Section 456.3–302 provides as follows:

The holder of a testamentary power of appointment may represent and bind persons whose interests, as permissible appointees, takers in default, or otherwise, are subject to the power.

In this section "testamentary power of appointment" means a testamentary power of appointment exercisable without the consent of the creator of the power or person holding an adverse interest in favor of:

(1) a class of appointees that includes the holder, the holder's estate, the holder's creditors, or the creditors of the holder's estate; or

(2) all persons other than the holder, the holder's estate, the holder's creditor's [sic], or the creditors of the holder's estate.

Based on its conclusion that Mr. Brams possessed a § 456.3–302 testamentary power of appointment, the trial court held

---

**5.** Section 456.4B–411, enacted in 2005, announces a new standard governing the modification and termination of trusts. That statute provides, however, that "[t]he provisions of section 456.590 shall apply to all trusts that were created under trust instruments that become irrevocable prior to January 1, 2005." Because Harriett Brams died on November 6, 2002, and the Harriett Brams Trust became irrevocable at that time, § 456.590 continues to govern the power of the circuit court to terminate the Trust.

Pursuant to § 456.11–1106.1, also enacted in 2005, "[e]xcept as otherwise provided in sections 456.1–101 to 456.11–1106, ... (1)[s]ections 456.1–101 to 456.11–1106 apply to all trusts created before, on, or after January 1, 2005." Consequently, although § 456.590 continues to govern the termination of the Harriett Brams Trust by virtue of the specific savings language in § 456.4B–411, *other* provisions of the 2005 amendments—including most importantly § 456.3–302—*also* apply here, due to the general effective date provisions of § 456.11–1106. *See* our decision in the companion case, *In re Michael Brams Trust # 2,* No. WD68546, for further discussion.

**6.** Although the Trustees initially contended that Ms. Helfgott was an adult beneficiary of the trust and thus was a necessary party, the trial court rejected their arguments, and that ruling has not been appealed.

that Mr. Brams' desire to terminate the Trust was binding on any other persons with an interest in the Trust, including any unborn or unascertained beneficiaries. Accordingly, the court concluded that it was not required to make a specific finding that termination would benefit the unborn and unascertained beneficiaries, as would otherwise be required by § 456.590.2.

Article SEVENTH of Harriett Brams' Will did not confer a § 456.3–302 testamentary power of appointment on Mr. Brams, however. Article SEVENTH only gave Mr. Brams the power to appoint trust assets to "such descendants of any degree of my said grandson ... as my said grandson shall by last will and testament prescribe," with the explicit proviso that "this power shall not be exercisable to any extent, directly or indirectly, in favor of my said grandson, his estate, his creditors or the creditors of his estate." Mr. Brams' power to appoint Trust assets to his "descendants of any degree" is not a § 456.3–302 testamentary power of appointment. More specifically, Mr. Brams' "descendants" do not constitute: (1) the holder of the power of appointment (*i.e.*, Mr. Brams); (2) Mr. Brams' estate; (3) his creditors; or (4) the creditors of his estate, the four classes of appointees specified by § 456.3–302(1). Nor do Mr. Brams' "descendants" qualify as *"all persons other than* the holder, the holder's estate, the

holder's creditor's [sic], or the creditors of the holder's estate" for purposes of § 456.3–302(2).[7]

Because Mr. Brams did not hold a "testamentary power of appointment" within the meaning of § 456.3–302, he could not virtually represent unborn and unascertained beneficiaries of the Trust in this trust termination proceeding. There was accordingly no basis to excuse Mr. Brams from satisfying *both* of the mandatory requirements of § 456.590.2:(1) that all non-disabled adult beneficiaries consent to trust termination; *and* (2) that the court find that unborn and unascertained beneficiaries "will benefit" from termination. *See Brock v. Blackwood,* 143 S.W.3d 47, 57 (Mo.App. W.D.2004)("in order to properly plead a cause of action for the variation or termination of a trust, pursuant to § 456.590.2, the petitioner must plead ultimate facts establishing that: (1) all the adult beneficiaries of the subject trust had consented to the requested variation or termination of the trust; and (2) the requested variation or termination would benefit the disabled, minor, unborn, and unascertained beneficiaries of the trusts"); *In re Trust of Nitsche,* 46 S.W.3d 682, 686 (Mo.App. S.D.2001)(noting that the trial court "correctly observed that § 456.590.2 requires both findings in order for it to terminate the trust as petitioners requested; [and] that the petitioners bore the

---

7. We note that the trial court's final judgment cited Article FIFTH of Harriett Brams' Will as the section governing the Harriett Brams Trust. Respondent admits that this reference was in error. Notably, the trial court's own earlier Order denying the Motion to join Ms. Helfgott as a necessary party recognized that Mr. Brams did *not* possess a § 456.3–302 "testamentary power of appointment" with respect to the Harriett Brams Trust, because Mr. Brams' power of appointment "cannot be exercised in favor of Michael, his estate, his creditors or the creditors of his estate," but

instead "may only be exercised in favor of a specific class of takers, namely his descendants."

Although he now defends the trial court's ruling, Mr. Brams' counsel acknowledged below that his power of appointment was a "limited testamentary power," and presented a demonstrative exhibit which specifically stated that "**Mo.Rev.Stat. § 456.3–302 does not apply.** Here, Michael Brams is given a very limited power. This type of power doesn't fall under Mo.Rev.Stat. § 456.3–302."

burden of proof on both issues").[8]

■ Because of its interpretation of the scope of Mr. Brams' power of appointment, the trial court concluded that no showing of benefit to unborn and unascertained beneficiaries was necessary, despite § 456.590.2's express requirements. The *judgment must accordingly be reversed,* and the case remanded to permit the court to address this issue after appropriate further proceedings.

### C. Mr. Brams' Alternate Arguments Cannot Justify Affirmance.

■ Mr. Brams argues, in the alternative, that he had the power to represent unborn or unascertained beneficiaries under §§ 456.3–303, 456.3–304 and/or 472.300. Yet these statutes would allow Mr. Brams to represent any unborn and unascertained beneficiaries only if they share a "substantially identical interest" with Mr. Brams, and/or no conflict of interest exists between Mr. Brams and such unborn or unascertained beneficiaries. Given that Mr. Brams is requesting that the trust corpus be paid to him personally and without restriction, and that the Harriett Brams Trust be terminated, we fail to see how he could share a "substantially identical interest" with the unborn or unascertained beneficiaries, with whom his interests are in direct conflict. *See, e.g., In re Trust of Nitsche,* 46 S.W.3d at 685–86 (affirming trial court's order denying petition to terminate trust, in which trial court was unable to determine "how it could conceivably be possible that termination of the within trust could benefit any existing or possible great grandchildren when termination would result in the payment of all corpus and income to the income beneficiary"); *In re Will of Sanders,* 123 Misc.2d 424, 474 N.Y.S.2d 215, 218 (1984) ("[A] present income interest is not the same and is in fact antagonistic to a future remaining interest."); Cmt. to UNIF. TRUST CODE §§ 456.4A–411, .4B–411 (noting that, "by the very nature of a power of appointment, there would always be a potential conflict of interest between the holder of the power and either the permissible appointees or the takers in default depending upon whether or not the power was exercised").[9]

■ We also reject Mr. Brams' argument that the Trustees' decision to appeal the trial court's termination order is somehow evidence of bad faith or of the Trustees' improper administration of the Trust. *See, e.g., Garrison v. Garrison,* 354 Mo. 62, 188 S.W.2d 644, 644–45 (1945) (trustees entitled to appeal trial court judgment adversely affecting interests of unborn and unascertained beneficiaries); George Gleason Bogert & George Taylor Bogert, THE LAW OF TRUSTS AND TRUSTEES § 581 (Rev.2d ed. 1980) ("The duty to defend is not confined to the trial court but extends to the appellate court. If the trustee knows or ought to know that there is a reasonable ground for securing a reversal of a decree of the trial court invalidating or otherwise adversely affecting the trust, he has a duty to appeal and will be protected in so do-

---

**8.** In the related case also decided today, *In re Michael Brams Trust # 2,* No. WD68546, we hold that a petitioner seeking to terminate a trust must demonstrate that unborn and unascertained beneficiaries "will benefit" from trust termination, even where the petitioner or another consenting person holds a "testamentary power of appointment" meeting the criteria of § 456.3–302.

**9.** The official comments to the Uniform Trust Code (on which the MUTC is based), as well as the drafters' comments to the MUTC as enacted, are contained in CHAPTER 456, MISSOURI REVISED STATUTES, INCLUDING THE MISSOURI UNIFORM TRUST CODE WITH THE 2006 TECHNICAL CORRECTIONS, published by The Missouri Bar, Probate and Trust Committee.

ing."). Particularly where we have found the Trustees' substantive arguments to be meritorious, and in the absence of any trial-court finding of mismanagement or breach of fiduciary duty by the Trustees, we cannot uphold the circuit court's termination of the Harriett Brams Trust on the basis that the Trustees are not entitled to appeal it.

## III. Conclusion

Michael Brams does not possess a § 456.3–302 testamentary power of appointment with respect to the Harriett Brams Trust, and his purported ability to represent other interested persons cannot relieve him of the obligation under § 456.590.2 to show that termination of the Trust "will benefit the [Trust's] ... unborn and unascertained beneficiaries." The judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

All concur.